## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

The Doc App, Inc. d/b/a My Florida Green,
a Florida corporation
    *Plaintiff*,       Case No.: 2:25-CV-838

v.

Leafwell, Inc.,
a Delaware corporation,
    *Defendant.*

_____

## DEFENDANT LEAFWELL'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

  After waiting approximately ten months since the alleged conduct at issue first began, Plaintiff, The Doc App, Inc. d/b/a/ My Florida Green ("MFG") has now filed a Motion for Temporary Restraining Order and Preliminary Injunction (D.E. 17, the "Motion"), seeking to prevent supposed imminent irreparable harm. To substantiate its dubious factual and legal contentions, MFG evidently deemed it necessary to invent much of its legal authority. By the Undersigned's count, MFG's Motion contains **two** completely fabricated cases, **four** purported quotes to cases that do not contain anything resembling those quotes, and **six** instances where MFG cites to cases that have nothing whatsoever to do with the stated proposition (*see* pages 7–8, *infra*). MFG's Motion should not be taken seriously; it should be denied for this reason alone.

  Aside from that major threshold issue, MFG's evidence (consisting primarily of conclusory and unsubstantiated self-serving statements from its own principals) does not come close to meeting the requisite standard – one that is particularly high, here,

because MFG asks this Court to disrupt the status quo, rather than preserve it. In essence, MFG asks this Court to enforce two statutes against Defendant Leafwell, Inc. ("Leafwell"). But those statutes do not allow for a private right of action. They also do not apply to Leafwell or its alleged conduct. MFG's efforts to route its enforcement through the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") are similarly unavailing; the evidence does not establish deception, nor any actual damages, nor any specific articulable direct injury to itself or to consumers that might directly result from anything Leafwell has allegedly done. Nor is there irreparable harm, given that MFG's alleged injury is monetary and MFG waited until many months after learning of the alleged conduct to move for injunctive relief.

For these reasons, as further detailed herein, MFG's Motion should be denied.

## BACKGROUND

### I. Procedural Posture

MFG alleges that the conduct at issue has been ongoing for nearly eleven months; MFG's learned about it – at the latest – on April 8, 2025. *See* Am. Compl. Ex. M, D.E. 3 at 41 (email promotion to "ana@myfloridagreen.com"). On August 4, 2025, MFG wrote a letter (the "Letter") to Leafwell, making similar demands to those that it now puts before the Court. *See* Ex. 1 to Stafford Declaration ("J.S. Decl.") at 1 (dated Aug. 4, 2025). MFG waited another eighteen days to send the Letter to Leafwell's registered agent. *See* Ex. 2 to J.S. Decl. (Letter sent Aug. 22, 2025). On September 3, 2025, MFG first filed its complaint in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida (the "State Court Action"), which it

then amended on September 15, 2025. D.E. 3. On September 15, 2025, MFG filed an *ex parte* "Emergency Motion for Temporary Injunction" in the State Court Action. D.E. 17. During this period, MFG made no attempt to have Leafwell served, despite having previously sent the Letter to Leafwell's registered agent. J.S. Decl. ¶ 6.

After Leafwell removed the State Court action on September 19, *see* D.E. 1, MFG's Counsel asked to confer about its forthcoming "emergency motion." J.S. Decl. ¶¶ 8–9. Although Leafwell's Counsel suggested a call, MFG's Counsel never responded. *Id.* ¶¶ 10–11. Instead, on October 2, 2025, he declared that MFG would immediately file MFG's Motion. *Id.* ¶ 13. But it was not filed until October 14, 2025.

## II.     MFG's Allegations, Evidence, and Theories[1]

MFG is an entity that "connect[s] patients with qualified physicians for medical marijuana certifications." Am. Compl. ¶¶ 2,11. Although the alleged conduct at issue primarily involves unnamed physicians, as well as a supposed vast conspiracy of medical marijuana dispensaries, MFG only sued its direct competitor: Leafwell. Per MFG's papers, Leafwell is a "telehealth platform," which provides patients and dispensaries with a comprehensive suite of telehealth services focused on education, certification, and ongoing support. *See* Am. Compl. ¶ 3; *id.* Ex. K.

According to MFG's allegations, beginning in early 2025, Leafwell became involved in "a series of in-person events across Florida" – at which patients could

---

[1]     Leafwell disputes all of MFG's characterizations and allegations, and is ready willing and able to offer its own evidence. But, at this juncture, MFG's purported evidence, together with the Motion's largely fabricated citations, do not suffice to meet its extremely high burden. Since MFG is unable to raise a colorable issue, the Motion should simply be denied on the papers.

receive "medical marijuana card certifications" for "free." *Id.* ¶ 6. At these events, patients can "receive their physician evaluations at no charge." *Id.* Endeavoring to corroborate these allegations, MFG attached an article about an unrelated program of Leafwell's, *id.* Ex. A, as well as a blog stating that "patients can get evaluated by cannabis-knowledgeable physicians and certified for free." *Id.* Ex. I.

Without further substantiation, MFG concludes that the only way for the service to be "free" is for a third-party medical marijuana dispensary to pay a third-party physician's bill "in a quid pro quo arrangement." Mot. at 2; Am. Compl. ¶¶ 6, 7 (alleging that the medical marijuana dispensaries "pay the doctor's fee on the patient's behalf"). MFG summarily concludes that this "arrangement" – between the two third parties – violates Fla. Stat. § 817.505 and Fla. Stat. § 381.986(3)(b). Mot. at 4–5. Then, quoting its own allegations, MFG claims that "Leafwell has publicly acknowledged that it 'partners with dispensaries to cover the cost of the physician evaluation[.]'" *Id.* at 2. But MFG's papers do not contain any other support for this assertion. *See id.*

Struggling to describe a consumer injury, MFG articulates its own belief that this situation raises "*questions*" regarding the objectivity of a given physician consultation, thereby leading to its own supposed concern that some "patients *may* receive subpar or conflicted medical advi[ce]." Am. Compl. ¶¶ 8, 17 (emphasis added). Separately, MFG claims that customers have been injured by Leafwell's "deceptive" conduct because the pop-up events are not a "genuinely free service," Mot. at 3, despite the fact that MFG's own submitted materials (i) state that any initial booking fee is refundable, and also (ii) disclose that the patient is responsible for the $75 state

application fee and (iii) a $2.75 online convenience fee (to the Florida Department of Health). *See, e.g.*, Am. Compl. Ex. A at 31. MFG also expresses concern that "dispensary partners" – rather than Leafwell – "shared or released patient contact information [ ] to Leafwell for use in marketing these events"; this assertion is grounded on a third-party's dispensary's having marketed an event to MFG's staff. Id. ¶ 10. Next, MFG claims (for the first time) that "Leafwell in turn shared attendee data" for "follow-up marketing," but there is no evidence supporting this.[2] Mot. at 6.

MFG's own supposed legal injury is based entirely on speculation. MFG contends that patients who chose to work with Leafwell in 2025 "might" otherwise "have chosen" to work with MFG, resulting in MFG having fewer patients than it had "expect[ed]." Am. Compl. ¶¶ 11, 21, 22, 27. As support, MFG appended its own internal "Memorandum" – claiming that 444 patients have not returned in 2025, including several long-term clients, and that 284 "fewer new patients [ ] onboarded," but it makes no effort to explain (i) the types of services these patients were receiving, (ii) whether they provided any reasons for leaving, and (iii) the specific dates that were impacted by attrition. Am. Compl. Ex. O. MFG also relies on its own CEO's affidavit – asserting that MFG's "revenues have decreased by approximately 51% during the relevant period, which I attribute to patient diversions to Leafwell's subsidized program," and also that MFG has "lost both existing and *prospective* patients who

---

[2]    MFG also suggests that "Leafwell publicly claims to 'publish studies' and 'conduct research' using patient data," Mot. at 6, even though MFG's exhibits are devoid of any reference to "publish[ing] studies," and "research" is only mentioned on a website link. *See id.* at 44, 53.

stated *or implied* that they chose Leafwell's "free" option"; but, MFG's CEO makes no effort to quantify this. *Id.* Ex. P-1 at ⁋ 4.b (emphasis added). Moreover, this affidavit, and more broadly MFG's evidentiary papers as a whole, are devoid of any specific quotes, testimonials, patient surveys, expert testimony, or other detailed analysis. *Id.*

MFG further claims to have lost "goodwill" and suffered "reputation[al]" harm, due to the "false impression that others are offering the 'same' service for free," *id.* ⁋ 12, and also that "relationships" were somehow lost. *See id.* Ex. P-3. But MFG admits that there has been no effort to quantify these things. *See id.* MFG does not claim that Leafwell ever took any direct action that detrimentally impacted its brand, nor that it ever named MFG in any public materials.

## ARGUMENT

Because it is seeking to alter the status quo, MFG faces a particularly high burden under Fed. R. Civ. P. 65. And, insofar as the merits are concerned, MFG's Motion – which is rife with speculation, legal deficiencies, and hollow self-serving facts – does not meet Rule 65. Further, MFG complains only about monetary injury; its own conduct demonstrates that there is no imminent risk of irreparable harm, and there is no evidence substantiating its supposed loss of goodwill. On balance, MFG's revenue-related concerns do not justify the requested disruption.

But all of these problems pale in comparison to the fact that the Motion contains nearly one-dozen false or fictious citations. *See United States v. Stephens*, No. 23-CIV-80043, 2025 LEXIS 199774, at *10 (S.D. Fla. Aug. 6, 2025) ("Citing imprecise, nonexistent legal authority breaches this duty of candor."); *Versant Funding LLC v.*

*Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-cv-81140, 2025 LEXIS 98418, at *20–21 (S.D. Fla. May 20, 2025) (such conduct is "a serious misrepresentation to the Court and to opposing counsel"). By the Undersigned's count, MFG's Motion contains **two** completely non-existent cases, **four** purported quotes to cases that do not contain them (nor anything close), and **six** falsely cited propositions.

***Non-existent cases***. On page 7, MFG cites to *Henson v. Allison Transmission, Inc.*, No. 6:16-cv-1223-Orl-41DCI, 2017 WL 59085 (M.D. Fla. Jan. 5, 2017). And on page 10, MFG cites to *State Farm Mut. Auto. Ins. Co. v. Pressley*, 727 So. 2d 1019, 1029 (Fla. 3d DCA 1999). Per LexisNexis and Westlaw, these cases do not exist.

***Quotes being attributed to cases that do not contain them***. MFG also purports to quote from four different cases that do not contain anything remotely resembling those quotes. In the Motion, MFG's fictitious quotes are followed by cites to: (i) to *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972) on page 14; (ii) *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, F.3d 1242, 1247 (11th Cir. 2002) on page 14; (iii) to *McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998) on page 14, and (iv) *Four Seasons Hotel & Resorts, B.V. v. Consorcio Barr*, S.A., 320 F.3d 1205, 1211 (11th Cir. 2003) on page 13. On page 13, MFG also states that *Four Seasons* quoted *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs.*, 425 F.3d 964 (11th Cir. 2005), but this would have been impossible because *Bellsouth* was published two years after *Four Seasons*.

*__Propositions unsupported by the cited authorities__*. On at least six occasions, MFG cites cases that have nothing whatsoever to do with the claimed propositions. Four examples – contained on pages 5, 7, 10 and 11 of the Motion – involve citation to *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773 (Fla. 2003). A fifth example is page 14's citation to *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008). And the sixth instance is the page 14 citation to *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).

Having evidently resorted to inventing cases, propositions, citations to substantiate its position, and falsifying cases, MFG's Motion does not deserve any serious consideration from this Court. It should be denied with prejudice out-of-hand. With that being said, the Motion is due to be denied on the merits for the reasons that follow.

## I.  __Because MFG is seeking to disrupt the status quo, rather than preserve it, the Motion is subject to a particularly high standard of review.__

As a general matter, preliminary injunctions and temporary restraining orders "are extraordinary and drastic remedies." *See, e.g.*, *Bens v. Bryten Real Est. Partners, LLC*, No. 2:25-cv-00602-JES-DNF, 2025 LEXIS 180793, at *1 (M.D. Fla. Sep. 16, 2025). Their chief function "is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1178 (11th Cir. 2020). And where a request for a preliminary injunctive relief seeks "to force another party to act, rather than simply maintain the status quo, it becomes a [request for a] mandatory or affirmative injunction." *Dotson v. Dixon*, No. 5:22-cv-479-WFJ-

PRL, 2025 LEXIS 114840, at *3 (M.D. Fla. June 17, 2025) (quotes omitted). For instance: a request to order a company to "switch its current operation and begin operating under the Delivery.com banner," was "a mandatory injunction," *Delivery.com Franchising, LLC v. Moore*, No. 20-20766-CIV, 2020 LEXIS 108359, at *24 (S.D. Fla. June 19, 2020), as was a request to enjoin a defendant from "entering into" an "agreement with any third party." *See Genterra Group v. Sanitas United States*, No. 20-CV-22402, 2021 LEXIS 10748, at *7 (S.D. Fla. Jan. 19, 2021).

Here, MFG attacks Leafwell's alleged longstanding business practice involving "in-person events across Florida," with a variety of hosts and sponsors. Am. Compl. ¶ 6. MFG now asks this Court to issue an order ceasing Leafwell's operations, Mot. at 19–20, thereby effectively "forc[ing] [Leafwell] to act." *See Dotson*, 2025 LEXIS 114840, at *3. As such, MFG is seeking a mandatory/affirmative injunction.

But mandatory/affirmative preliminary injunctions are "particularly disfavored." *Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017). As a result, "the burden on the moving party" is "increase[d]," relative to a typical request seeking to simply maintain the status quo. *Dotson*, 2025 LEXIS 114840, at *3. Accordingly, courts "apply a heightened standard of review." *See Verizon Wireless Pers. Communs. LP v. City of Jacksonville*, 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009). These motions "should not be granted except in rare instances in which the facts and law clearly favor the moving party." *Powers*, 691 F. App'x at 583 (quotes omitted).

Therefore, MFG's Motion is subject to a particularly high standard of review.

## II. **MFG cannot meet its (heightened) Fed. R. Civ. P. 65 burden.**

Relying on fake cases, speculation, and self-serving conclusory assertions masquerading as evidence, MFG is not able to meet its Fed. R. Civ. P. 65 burden.

### A. **MFG is unlikely to succeed on the merits.**

To begin, MFG's cannot establish that any of its theories – regarding (1) Fla. Stat. § 381.986, (2) Fla. Stat. § 817.505, and (3) FDUPTA – are likely to succeed.

### *(1) MFG's Fla. Stat. § 381.986 theory fails.*

The Motion essentially asks this Court to enforce Fla. Stat. § 381.986 against Leafwell. Mot. at 10–11 (asserting that Leafwell "violat[ed]" the "Physician-Dispensary Separation Requirement" of "§ 381.986(3)(b)"). But MFG has no private right of action. And even if it did, Leafwell is not subject to the statute's enforcement, and MFG has not established the existence of the requisite "economic interest."

*No private right of action*. Statutes only create private right(s) of action where the legislature clearly evidences its intention for them to do so. *See, e.g.*, *Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1228 (S.D. Fla. 2010) (courts "should be 'particularly reluctan[t] to read private rights of action in state laws where state courts and state legislatures have not done so.'"). Section 381.986 contains no indication that private entities – like MFG – have the right to enforce it; all references to any enforcement or remedy involve the Florida Department of Health. *See* Fla. Stat. § 381.986(10)(f)–(g).

*Leafwell is not susceptible to the enforcement of the statute.* MFG defines Leafwell as "a telehealth platform and organizer of events." Am. Compl. ⁋ 3. By its text, § 381.986(3)(b) applies only to "qualified physician[s]," "medical marijuana treatment center[s]," and "marijuana testing laborator[ies]." There is no caselaw suggesting that any other entities – such as one standing in shoes similar to those of Leafwell – could even potentially be susceptible to the enforcement of § 381.986(3)(b).

*Leafwell lacked the requisite "economic interest."* Section 381.986(3)(b) precludes a qualified physician from being "employed by, or have any direct or indirect economic interest in, a medical marijuana treatment center or marijuana testing laboratory." *Id.* "[T]he term 'economic interest'" has been interpreted narrowly as referring only to "an ownership interest in an MMTC, or in otherwise sharing in [its] profits and losses." *Dept. of Health v. Davis*, 2020 Fla. Div. Adm. Hear. LEXIS 214, at *31–32 (April 14, 2020). Here, MFG provides no evidence that Leafwell (nor, for that matter, any "qualified physicians") shared in any medical marijuana treatment center's profits.

### *(2) MFG's Fla. Stat. § 817.505 theory fails.*

Although MFG essentially asks this Court to enforce § 817.505 against Leafwell, MFG fails to establish that such a thing would be appropriate.

To begin, § 817.505 – part of the *criminal* code – authorizes only "the Attorney General or the state attorney of the judicial circuit in which any part of the offense occurred" to "maintain an action for injunctive or other process to enforce the provisions of this section." Fla. Stat. § 817.505(5). Accordingly, private entities – like MFG – are "*unable*" to even seek relief stemming from § 817.505, because it does not

"imply a private right of action." *See Millenium Labs., Inc. v. Universal Oral Fluid Labs., LLC.*, No. 8:11-cv-1757-MSS-TBM, 2012 LEXIS 191035, at *14 (M.D. Fla. Apr. 25, 2012) (emphasis added); *see also, e.g.*, *Hinkle v. Angels House, LLC*, 2020 Fla. Cir. LEXIS 15335, at *21–22 (1st Cir. Palm Beach Cnty. Feb. 6, 2020) (§ 817.505 "does not create a civil or private cause of action").

And substantively, MFG has not established, or even suggested, that Leafwell – a "telehealth platform" – is: (a) offering or paying a commission (and the like) to induce the referral of a patient; (b) soliciting or receiving a commission (and the like) in return for referring a patient; (c) soliciting or receiving a commission (and the like) in return for acceptance or acknowledgement of treatment. *See* Fla. Stat. § 817.505(1). In fact, per MFG, any necessary fees are allegedly "paid by a sponsoring [medical marijuana] dispensary," – which allegedly "provide[s] venue space," "market[s] their products" to "new patients," and "pay[s] the doctor's fee on the patient's behalf." Am. Compl. ¶¶ 6, 7. But MFG has evidently declined to sue any physicians or medical marijuana dispensaries – likely because they are not MFG's competitors.

Attempting to tie in Leafwell, MFG suggests that, by being involved in "a series of in-person events across Florida" at which "patients" can get "medical marijuana card certifications," *id.* ¶ 6, Leafwell somehow violated the statute. Mot. at 9–10. But there is no indication that Leafwell exchanged anything of value for anything of value. MFG does not even precisely articulate how Leafwell is benefitting from the third

parties' alleged conduct at issue.[3] And, "it is well-established that mere presence and knowledge that a crime is being committed are insufficient to prove participation in a criminal offense." *Miami-Dade County v. Asad*, 78 So. 3d 660, 672 (Fla. 3d DCA 2012).

MFG also lacks a legal mechanism through which it can assert an "aiding and abetting" theory of a § 817.505 violation. *See* Mot. at 10. This is because MFG lacks the right to enforce a criminal statute, and because (unlike some common-law torts) FDUPTA does not expressly recognize an aiding and abetting theory of liability.

Nonetheless, the theory does not hold water. Aiding and abetting liability in the civil context requires: "(1) an underlying violation on the part of the primary wrongdoer, (2) knowledge of the underlying violation by the aider and abettor, and (3) the rendering of substantial assistance to the wrongdoer by the aider and abettor." *Hippocrates Health Inst., Inc. v. Bank of Am., N.A.*, No. 24-80790-CIV, 2025 LEXIS 70566, at *8 (S.D. Fla. Apr. 14, 2025) (citing *Fonseca v. Taverna Imps., Inc.*, 212 So. 3d 431, 442 (Fla. 3d DCA 2017)). Regardless of whether MFG could theoretically establish liability as to certain unnamed third parties, MFG does not present evidence that Leafwell (i) had the requisite specific knowledge of the underlying statutory violations, nor (ii) that Leafwell ever provided any material "assistance" that could properly be called "substantial." *See id.* MFG's papers are devoid of any legal authority suggesting that Leafwell's alleged conduct constituted "substantial" "assistance" to the

---

[3]     MFG's papers frequently use the word, "inducement," Mot. at 4, 7, 13, 18, 19, as well as "collusion," Am. Compl. ¶ 9, but those conclusory allegations should not be credited. And, even if they were credited, it is not clear they would have any technical import under § 817.505.

third parties that were allegedly involved. Further, "[w]hen a statute imposes a penalty, any doubt as to its meaning must be resolved in favor of strict construction so that those covered by the statute have clear notice of what conduct the statute proscribes." *City of Miami Beach v. Galbut*, 626 So. 2d 192, 194 (Fla. 1993).

To support the opposite proposition – that the notion of inducement should be interpreted "broad[ly]" – MFG apparently deemed it necessary to *invent a case*, "*State Farm Mut. Auto. Ins. Co. v. Pressley*, 727 So. 2d 1019, 1020 (Fla. 3d DCA 1999)." *See* Mot. at 9–10. Then, MFG evidently decided to *invent a second case* – "*Henson v. Allison Transmission, Inc.*, No. 6:16-cv-1223-Orl-41DCI, 2017 WL 59085 (M.D. Fla. Jan. 5, 2017)" – purporting to support the bold proposition that conduct violative of § 817.505 is "routinely" found to be "per se unfair." Mot. at 7. To add more insult to injury, MFG cites to *PNR, Inc. v. Beacon Prop. Mgmt., Inc.* 842 So. 2d 773 (2003) to support the same proposition, even though *PNR* only addressed one specific question that was unrelated to that proposition. *See id.* at 775. MFG's conduct illustrates the dearth of authority supporting its meritless § 817.505 theory.

### (3) MFG's FDUPTA theories are unlikely to succeed on the merits.

Even if MFG could use FDUPTA as an end-run around its inability to enforce § 381.986 or § 817.505, MFG's evidence does not establish any likelihood of success.

*MFG has not established that Leafwell "misled" consumers.* MFG asserts that Leafwell's alleged promotions are deceptive because patients are told that certifications are free. Mot. at 13. But, in its own pleading, MFG admits that "[t]he

certifications are 'free' to patients," and also that the "patients receive their physician evaluations at no charge." Am. Compl. ¶¶ 6, 7. Separately, although not alleged in the Amended Complaint, MFG asserts that Leafwell's promotional materials were deceptive because they did not disclose that "patients must pay certain fees (including the state fee and a booking deposit)," Mot. at 7; but Exhibit F to the Amended Complaint (D.E. 3 at 25) expressly states that "State fees apply," and MFG's evidence states that patients pay the applicable state fee for a card, processing, and a booking deposit. *See, e.g.*, Mot. Ex. E, D.E. 3 at 31, 40, 47, 61 ("Patients only pay the $75 state fee. . ."). Clearly, there is no deception here.

<u>*MFG has not alleged the requisite "actual damages."*</u> MFG's attempt to fulfill the "actual damages" element of FDUPTA – by asserting that its "revenues" "have decreased by approximately 51%" as a result of Leafwell's conduct – is unavailing. *See* Am. Compl. ¶ 12. This is because lost profits are a "quintessential example of 'consequential damages,'" *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987), and "FDUTPA 'actual damages' do not include consequential damages." *Kia Motors America Corp. v. Butler,* 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012) ("consequential damages in the form of lost profits are not recoverable under FDUTPA"). Dismissal is therefore warranted. *See JustTech, LLC v. Kaseya US LLC*, No. 22-CIV-22454, 2023 LEXIS 151834, at *28 (S.D. Fla. Aug. 28, 2023) (dismissing FDUTPA claim for, *inter alia*, failure to sufficiently plead actual damages).

*MFG has not established that it is aggrieved.* MFG has failed to demonstrate that it is "aggrieved," because this element cannot be established by "mere[] speculati[on]." *See Stewart Agency, Inc. v. Arrigo Enters.*, 266 So. 3d 207, 214 (Fla. 4th DCA 2019) (citation omitted). Indeed, where a plaintiff's position regarding a supposed loss of reputation and customers is supported with only "self-serving statements by [plaintiff's] personnel," it does not suffice to constitute the "specific showing" needed to substantiate alleged irreparable harm based on loss of goodwill and reputation.[4] *See Mercedes-Benz U.S. Int'l Inc. v. Cobasys, LLC,* 605 F. Supp. 2d 1189, 1207 (N.D. Ala. 2009). *Here*, MFG posits *only* that it is "likely" that some patients attending Leafwell events would have otherwise engaged "providers like [MFG]," and that it had fewer clients than "expect[ed]" in 2025.[5] Am. Compl. ¶¶ 11, 21, 22. However, these claims are substantiated only by (i) MFG's own (self-serving) superficial work product in the form of a "memorandum" (*see* Am. Compl. Ex. O, D.E. 3 at 47), as well as (ii) a self-serving affidavit from MFG's Chief Executive Officer – where, without basis, he simply declares that he personally "attribute[s]" the loss in revenue to Leafwell's alleged conduct (Am. Compl. Ex. P-1 ¶ 4.b, D.E. 3 at 50–52). MFG's materials also lack business-related information sufficient to rule out an independent cause of MFG's current financial woes. And MFG later admits that any supposed harm suffered is "existential," and therefore not concrete. *See* Mot. at 14. None of this suffices.

*MFG has not established consumer harm.* Under FDUPTA, entities must establish "an injury to a consumer." *Stewart Agency, Inc.*, 266 So. 3d at 214. But MFG does not

identify any actual, manifested injuries suffered by consumers. Even its own assertions are uncertain – alleging only that there are possible "*questions*" regarding the objectivity of a given physician consultation, and as a result that some "patients *may* receive subpar or conflicted medical advice." Am. Compl. ¶¶ 8, 17 (emphasis added). And there is no evidence that any of these supposed concerns came to fruition. There is no testimony from any patients or physicians, nor surveys, nor any detailed analysis.[6]

## B. There is no risk of irreparable harm, nor any urgency to MFG's request.

"It is well-established that a preliminary injunction cannot be granted absent a showing of irreparable harm." *Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1291 (M.D. Fla. 2002). In fact, where there is no likelihood of irreparable harm, it is not even necessary "to address the other . . . prongs." *Mendez Fuel Holdings, LLC v. Kendall Healthcare Grp., Ltd.*, No. 20-22984-CV, 2020 LEXIS 139512, at *9 (S.D. Fla. Aug. 5, 2020).

### (1) MFG's own conduct demonstrates the inherent lack of urgency, here.

According to MFG, the alleged conduct began in early 2025, Am. Compl. ¶ 6, and MFG learned about it no later than April 8, 2025. *See id.* Ex. M, D.E. 3 at 41. On

---

[4]    And, an entity's "general interest in curbing deceptive or unfair conduct" does not suffice, either. *See MacuHealth, LP v. Vision Elements, Inc.*, No. 8:22-cv-199-VMC-UAM, 2024 U.S. Dist. LEXIS 141667, at *11 (M.D. Fla. Aug. 9, 2024).

[5]    This is different than the situation in *BellSouth Telecomms,* where "Bellsouth was able to show that without a preliminary injunction, the company would lose about 3200 customers per week." *Mercedes-Benz U.S. Int'l, Inc.*, 605 F. Supp. 2d at 1207 (citing *BellSouth Telecomms.*, 425 F.3d at 970).

[6]    MFG also speculates about HIPAA violations (Mot. at 7), but this theory is conspicuously absent in the Amended Complaint. Therefore, it should be rejected. Additionally, there is no evidence of Leafwell "publish[ing] studies" or "conduct[ing] research." *See id.* at 6. Likewise, there is no evidence of Leafwell "shar[ing] attendee data. . . for follow-up marketing." *Id.* at 9. And, on this issue, MFG only theorizes about consumer harm – with no demonstration of any concrete injury.

August 4, 2025, MFG penned a Letter to Leafwell, but MFG waited until August 22, 2025 to actually send the Letter to Leafwell's registered agent. Exs. 1, 2 to J.S. Decl. Eventually, on October 14, 2025, MFG filed the instant Motion. This was (i) **71** days after writing that Letter; (ii) **53** days after sending the Letter via certified mail on August 22, 2025, *id.* Ex. 2; (iii) **41** days after filing its original complaint in Florida state court on September 3, 2025, D.E. 1-1; (iv) **19** days after sending a draft of the Motion to Leafwell's Counsel of record, *see* J.S. Decl. ¶ 9; and (v) **11** days after insisting that it was going to immediately file the Motion, *id.* ¶¶ 13–14.

Given this timeline, MFG's own conduct weighs heavily against a finding of irreparable harm. *See Merryman v. St. Johns River Water Mgt. Dist.*, No. 3:24-cv-658-MMH-SJH, 2025 LEXIS 189714, at *4 (M.D. Fla. Sep. 26, 2025) (injunction properly denied where plaintiffs were "aware of the damage caused [ ] by [d]efendants' alleged conduct" since the beginning, and "failed to offer any explanation" for delay); *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2018) ("A delay in seeking a preliminary injunction of even only a few months . . . militates against a finding of irreparable harm."); *Miner, Ltd. v. Sanacore*, No. 8:25-cv-1538-KKM-TGW, 2025 LX 279138, at *14 (M.D. Fla. July 16, 2025) (plaintiff's knowing about the harm for six months before moving "belies" the "claim that it needs immediate interim relief").

### *(2) MFG's loss of customer revenue is not irreparable harm.*

MFG's primary alleged injury is that its "revenues have . . . decreased by approximately 51% during the relevant period" because its customer base has

"erod[ed]." Am. Compl. ₱ 12 ("Damage/Harm"). This alleged harm is "purely monetary" under the law. *Spanish Fort Water Sys. v. N. Baldwin Utils.*, 618 F. Supp. 3d 1321, 1329 (S.D. Ala. 2022) (the effect of plaintiff's "loss of the customers . . . is purely monetary"). And "monetary harm . . . cannot constitute an irreparable harm." *Viking Sec. Servs., Inc. v. United States*, No. 608-CV-720-ORL-19KRS, 2008 LEXIS 36205, at *7 (M.D. Fla. May 2, 2008). To support its contrary position, MFG fabricated more caselaw. On page 13, MFG purports to quote *Four Seasons*, 320 F.3d at 1211, but *that quote does not exist in that case.* MFG's conduct evidences the frailty of its position.

### (3)    *MFG is not suffering irreparable harm due to loss of goodwill.*

MFG complains that because it is following (its own interpretation of) the law, its "customer base and goodwill" is "eroding." Am. Compl. ₱ 12. However, MFG's contention is grounded only in its own conclusory self-serving allegation, as MFG provides no evidence to support this proposition. At best, MFG's theory on this issue stems from pure speculation – which does not suffice. *See Cap., L.P. v. Heyden Enters., LLC*, 23-14248-CIV, 2024 LEXIS 127628, at *39 (S.D. Fla. July 19, 2024), *R&R adopted* 2024 LEXIS 147909 (S.D. Fla. Aug. 16, 2024) (denying injunctive relief and explaining that movant "offers no similar specific evidence to establish an extensive loss of goodwill or loss of customers"); *Curves Int'l. Inc. v. Mosbarger*, 525 F. Supp. 2d 1310, 1314 (M.D. Ala. 2007) (denying preliminary injunction where the plaintiff failed to show that loss of goodwill and customers was likely). Moreover, MFG's theory – that following the law has caused it irreparable harm – is also somewhat nonsensical.

**C.   On balance, MFG's attempt to disrupt the status quo is not justified in the face of its concern about its own profits.**

"A party seeking a preliminary injunction must further demonstrate that the threatened harm to it outweighs the harm a preliminary injunction may cause to the opposing party." *JTH Tax, LLC v. Stephen A. Gilbert & G-QTS, Inc.*, No. 8:22-cv-625-CEH-AEP, 2022 LX 86114, at *46 (M.D. Fla. May 12, 2022). And where monetary harm is weighed against a potential disruption of defendant's business, the balance of harm favors the defendant. *See Frontier Bank v. R & L Trucking Co.*, No. 3:05-cv-901, 2005 LX 34878, at *4 (M.D. Ala. Oct. 17, 2005); *Dubay v. King*, No. 3:17-cv-0348-J-20MCR, 2017 LX 186785, at *12 (M.D. Fla. July 26, 2017) (potential harm defendant would suffer "is extreme" given defendant's investment in its business).

Here, MFG is primarily, if not solely, concerned with its own revenues. MFG seeks to completely disrupt Leafwell's alleged business program – and thus the status quo. The balance-of-harm analysis clearly favors Leafwell.

In support of its balance of hardships argument, MFG again resorts to misquoted and misrepresented cases on Mot. at 14. MFG's purported quote to *Diapulse*, 457 F.2d at 29,  does not exist within the text of that case. MFG then claims that this purported quote was "quoted with approval in *Johnson & Johnson*, F.3d at 1247, but that case did not include, nor even cite to, *Diapulse* at all. Then, MFG purports to quote *Robertson*, 147 F.3d at 1301, twice; however, neither of MFG's stated quotations are contained within *Robertson*.

## CONCLUSION

For these reasons, the Court should deny the Motion with prejudice.

Dated:  October 28, 2025

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Jody A. Stafford*

Jody A. Stafford, Esq.
Florida Bar Number: 1015797
jody.stafford@us.dlapiper.com
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone:  (305) 702-8890

Paul B. Lewis, Esq.
Admitted *pro hac vice*
paul.lewis@us.dlapiper.com
Kevin M. Bergin, Esq.
Admitted *pro hac vice*
kevin.bergin@us.dlapiper.com
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000