UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

The Doc App, Inc. d/b/a My Florida Green,
a Florida corporation
        *Plaintiff,*

v.                             Case No.: 2:25-CV-838-SPC-NPM

Leafwell, Inc.,
a Delaware corporation,
        *Defendant.*

_____

## DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF

Pursuant to this Court's inherent authority, 28 U.S.C. § 1927, M.D. Fla. Local Rule 2.04, and Fed. R. Civ. P. 41(b), Defendant Leafwell, Inc. ("Leafwell"), moves for sanctions against Plaintiff, The Doc App, Inc. d/b/a My Florida Green ("MFG"), due to MFG's one dozen fabricated, fictitious, or false citations contained in MFG's Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion for TRO/PI") (D.E. 17), as well as MFG's subsequent conduct – to both this Court and to Leafwell directly. Specifically, for the reasons that follow (and consistent with the caselaw on this topic), Leafwell seeks attorneys' fees, a denial of any forthcoming Motion for TRO/PI, the dismissal of MFG's above-captioned lawsuit with prejudice, and any other sanctions or relief as this Court deems appropriate.

## BACKGROUND

The issues presented herein primarily arise out of improprieties within MFG's Motion for TRO/PI, which MFG filed on October 4, 2025. (D.E. 17), as well as

MFG's ensuing conduct generally relating to (or arising from) the same. Although this Court recently noted the Motion for TRO/PI's hallucinated authorities (in its Order to Show Cause (D.E. 25)), there is additional conduct by MFG that this Court should deem relevant to its ultimate determination as to appropriate sanction(s).

## I. MFG's October 4, 2025 Motion for PI/TRO Contained Fabricated Caselaw

On October 28, 2025, Leafwell filed its Opposition to MFG's Motion for TRO/PI (D.E. 19) (the "Opposition"). In drafting it, Leafwell determined that MFG's Motion for TRO/PI contains two citations to non-existent cases, four quotes to cases that do not contain them, and six falsely cited propositions.[1] Details are as follows:

### A. MFG's Citations to Cases that Do Not Exist

(1) MFG's Citation to "**Henson v. Allison Transmission, Inc**., No. 6:16-cv-1223- Orl-41DCI, 2017 WL 59085, at *6 (M.D. Fla. Jan. 5, 2017)"

On page 7 of its Motion for TRO/PI, MFG asserts that "Courts routinely find such conduct [in contravention of § 817.505 and § 381.986] to be per se unfair." In support of this assertion, MFG cited "**Henson v. Allison Transmission, Inc.**, No. 6:16-cv-1223-Orl-41DCI, 2017 WL 59085, at *6 (M.D. Fla. Jan. 5, 2017)" (emphasis in original); MFG further stated that this case held that "conduct violating established regulations is unfair under FDUTPA." D.E. 17 at 7. However, this case does not exist. To come to that conclusion, the Undersigned performed the following diligence:

*Reporter search*. A search of the reporter for MFG's citation – "2017 WL 59085" – results in a case from the Eastern District of New York, which is captioned *Datiz v.*

---

[1] In its Order (D.E. 25), the Court stated that it checked several of MFG's purported citations. *Id.* at 2-3 (noting that it was not necessary to check every case "to see the writing on the wall").

*International Recovery Assocs.*, No. 15-cv-3549 (ADS)(AKT),2017 U.S. Dist. LEXIS2477, at *1, 2017 WL 59085 (E.D.N.Y. Jan. 4, 2017). This opinion pertained to Fed. R. Civ. Pro. 60(b) and certification for interlocutory appeal. *Id.* at *1. The opinion does not contain the terms, "unfair," "deceptive," "FDUTPA," or "regulation."

   *Caption search*. A search within Florida state and federal courts for "Henson v. Allison" results in a 2008 case from the Southern District of Florida. *See Henson v. Allison Transmission*, No. 07-80382-CIV, 2008 LX 96482, at *1, 2008 WL 239153 (S.D. Fla. Jan. 28, 2008). This was a summary judgment order involving Florida's Lemon Law, the Magnuson-Moss Warranty Act, and the Uniform Commercial Code. *See id.* It does not contain the terms, "unfair," "deceptive," "FDUTPA," or "regulation."

   *Docket search.* Querying the abbreviated docket number (16-cv-1223) results in three U.S. District Court for the Middle District of Florida cases – *Barrios v. Secretary, Department Of Corrections et al.* (Case No. 6:16cv1223), which concerned a petition for writ of habeus corpus; *Combs v. Pu tnam Community Medical Center et al.* (Case No. 3:16cv1223), which was an employment discrimination case; and *Williams v. Ocwen Loan Servicing, LLC* (Case No. 8:16cv1223), which pertained to violations of the Telephone Consumer Protection Act. Neither "Henson" nor "Allison Transmission" were parties to any of these matters, nor was there any case action on January 5, 2017.

   (2) MFG's Citation to "*State Farm Mut. Auto. Ins. Co. v. Pressley*, 727 So. 2d 1019, 1020 (Fla. 3d DCA 1999)"

On pages 9-10 of its Motion for TRO/PI, MFG asserts that § 817.505 "is

intentionally broad, covering '*any form whatsoever*' of inducement." In support of this bold assertion and purported quotation, MFG states that the purported quotation can be attributed directly to "*State Farm Mut. Auto. Ins. Co. v. Pressley*, 727 So. 2d 1019, 1020 (Fla. 3d DCA 1999)." However, this case also does not exist. To come to that conclusion, the Undersigned performed the following diligence:

*Reporter search*. A search of the reporter for MFG's citation – 727 So. 2d 1019 – pulls up three matters: (i) *Charbonneau v. Morse Operations, Inc.*, 727 So. 2d 1017 (Fla. 4th DCA 1999) (vacating confirmation of arbitration award and remanding to determine entitlement to attorney's fees in individual's action against car dealership); (ii) *Sigler v. State*, 727 So. 2d 1017 (Fla. 1st DCA 1999) (*per curiam* dismissal with no written opinion); and *Pelton v. Singletary*, 727 So. 2d 1017 (Fla. 1st DCA 1999) (per curiam denial with no written opinion). None of these cases mention Fla. Stat. § 817.505, nor do they involve the issues raised in the Motion for PI/TRO.

*Caption search*. A search within Florida state and federal courts for "State Farm Mut. Auto. Ins. Co. v. Pressley" results in two cases: (i) *State Farm Mut. Auto. Ins. Co. v. Pressley*, 28 So. 3d 105 (Fla. 1st DCA 2010) (reversing denial of summary judgment in case involving personal injury protection and medical payments coverage benefits); and (ii) *State Farm Mut. Auto. v. Pressley*, No. 1D09-1481, 2010 Fla. App. LEXIS 3573 (Fla. 1st DCA Feb. 18, 2010) (denial of rehearing without written opinion). Neither contains the phrase, "any form whatsoever," and neither discusses § 817.505.

**B. MFG's Use of Non-Existent Quotations**

In addition to the above, at four different points, MFG's Motion for TRO/PI represents that certain quotations are contained within certain cases (identified by their supposed citations that immediately follow the quotation) – but nothing remotely resembling the quoted text is contained within the cited cases.

*First*, on page 14 of its Motion for TRO/PI, MFG states that *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972) contains the following quote: "one who elects to build a business on a product found to be [unlawful] cannot be heard to complain if an injunction against continuing that business causes economic hardship." However, *Diapulse* never said this, or anything close to it. *See generally id.*

*Second*, on page 14, MFG claims that the Eleventh Circuit quoted *Diapulse* "with approval" in *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). D.E. 17 at 14. But this quotation does not appear in *Johnson*. In fact, *Diapulse* is not cited anywhere within the *Johnson* opinion. *See id.*

*Third*, on page 14, MFG states that *McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998) contains the following quote: "finding no equitable hardship where the injunction merely 'requires compliance with existing contractual and legal duties.'" *Id.* Again, this quoted text is not in the case. *See generally* 147 F.3d 1301. And, a further search for the precise quotation does not return any matching results.

*Fourth*, on page 13, MFG states that *Four Seasons Hotel & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003) contains the following quote: "[l]oss of customers and goodwill is an irreparable injury." But the *Four Seasons* opinion does

not contain this quote, nor does it contain anything remotely resembling it.

### C. MFG's Citations to Cases that do not Support its Stated Propositions

There are at least six points in which MFG's Motion for TRO/PI cites to cases to support its propositions, even though the cited cases (in reality) have nothing whatsoever to do with MFG's stated propositions that they follow.

To begin, citing to *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773 (Fla. 2003) at four different points in its Motion for PI/TRO (pages 5, 7, 10 and 11), MFG asserts that *PNR* substantiates the following propositions: "[A] business practice that contravenes state health-safety laws is per se "unfair" under FDUTPA," D.E. 17 at 8; "Courts routinely find such conduct [in contravention of § 817.505 and § 381.986] to be per se unfair," D.E. 17 at 10; "Violations of the Patient Brokering Act also constitute '*unfair or deceptive acts*' under FDUTPA," D.E. 17 at 13 (emphasis in original); and "[t]he violation of § 381.986(3)(b) independently supports FDUTPA relief because a business practice that contravenes state health-safety laws is *per se* **unfair** under FDUTPA" D.E. 17 at 14 (emphasis in original). The only issue *PNR* addressed was whether "FDUTPA may be applied in a private cause of action arising from unfair or deceptive acts involving a single party in a single transaction or directed to a single contract." *Id.* at 775–77. *PNR* is devoid of any reference to Fla. Stat. §§ 817.505 or 381.986, and it is devoid of "health," "patient," and "brokering." *See id.*

Next, on page 15, MFG states that "[t]he Eleventh Circuit has repeatedly held that a defendant cannot suffer harm from an injunction that merely prohibits illegal

activities." In support of this, MFG first cites to *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008); but the cited portion of *Angel Flight of Ga.* discussed (among other things) how "the public deserves not to be led astray by the use of inevitably confusing marks-even in cases in which more than one entity has a legal right to use the mark." *Id*. For this same proposition, on page 15, MFG then cites to *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). However, *Chanel* was a trademark infringement case. *Id*. Neither of these two cases even remotely supports MFG's assertion – that a defendant cannot suffer harm from an "an injunction that merely prohibits illegal activities." *See* D.E. 17 at 17.

## II.  Communications with Opposing Counsel

Shortly after receiving the Opposition, MFG denied that any of its citations were incorrect – insisting to Leafwell's Counsel that it had engaged in a "diligen[t]" cite-checking process. An excerpt from MFG's October 28, 2025 email is as follows:

> **Every citation and quotation in our TRO/PI papers was verified directly against the official reporters. I use AI tools** only to assist with drafting and document organization—no different from Westlaw's Quick Check or Lexis's brief analyzer—**but all legal analysis and final language are human-authored and attorney-verified.**
>
> Here is how I check my work:
>
> - Every case is pulled from Westlaw, opened in full text, and reviewed for context, accuracy, and proper pin cites.
>
> - Each quoted passage is compared word-for-word to the official reporter.
>
> - I then run Quick Check/KeyCite to confirm that every authority is valid and correctly characterized.

- **PDFs of all cited authorities are saved and cross-referenced in an Appendix of Authorities that can be filed at any time**.

  This is the same diligence expected of any lawyer, and it ensures complete accuracy in our filings. Nothing about that process is improper or sanctionable.

J.S. Dec., Ex. 1 at 6 (emphasis added).

In response to Leafwell's counsel's request for a meet-and-confer on the sanctions issue, MFG then stated that it would not "bend to childish unsupported demands," and that Leafwell's counsel of record should "[d]o [her] job and draft a proper response" to the Motion for PI/TRO. *Id.* at 7.

The same evening, MFG sent two more unprompted emails – the second of which entirely reversed the position that MFG had taken earlier that day. It read:

Jody,

I've received your email. We will address the **citation defects** the professional way—on the docket.

Specifically, we are filing an Amended Motion that supersedes the prior filing and contains only verified, properly cited authority. If any additional **housekeeping** is appropriate, we will also file a short Notice of Errata. **That is how competent counsel corrects a <u>technical citation issue</u>—by fixing it transparently for the Court**—rather than turning it into rhetoric about "AI" or a vehicle for case-dispositive sanctions. . .

**We will continue to focus on the merits and maintain civility. I expect the same standard going forward.**

*Id.* at 3–4 (emphasis added).

But MFG did not maintain civility. On October 30, 2025, MFG wrote the

following to other attorneys on Leafwell's defense team:

> Paul and Kevin,
>
> **Maybe you want a real your [sic] associate back** because as far as I'm concerned, she threatened sanctions twice. **And maybe you should educate her about amending pleadings** to correct any misrepresentations to the court.
>
> **At some point, I would like to talk to the attorney that actually has some authority in this case.** Clearly, Jody is just throwing whatever at the wall and seeing what sticks.

*Id.* at 1 (emphasis added).

### III.  MFG's "Notice of Intent"

On October 30, 2025, MFG's counsel emailed Leafwell's counsel with the subject "URGENT: Amended Motion for Temporary Injunction — Conferral Before Filing." *See* J.S. Dec., Ex. 2 at 4. This email apparently sought to meet-and-confer about an Amended Motion, even though Leafwell had previously stated that it did not consent to MFG's filing thereof. *See* J.S. Dec., Ex. 1 at 2–3 (MFG's email, stating: "What in the world makes you think I need your consent to amend a motion?"). Leafwell did not engage further with MFG on the topic.

The same day, on October 30, 2025, MFG filed a "Notice of Intent to File Amended Motion for Temporary Injunction," which stated as follows:

> [The] prior motion has been **withdrawn** in order to permit the filing of a renewed motion supported by revised representations, corrected citations, additional legal support, and evidentiary support from the Florida Department of Health's Office of Medical Marijuana Use.

D.E. 20 ¶ 2 (emphasis in original). Notably, MFG's Notice of Intent stated that counsel

9

"initiated conferral" and "continues those discussions in good faith" – apparently neglecting to mention that Leafwell did not consent. D.E. 20 ₱ 4.

On November 5, 2025, the Court entered an Order withdrawing MFG's Motion "based on [ ] Plaintiff's Notice of Intent to File Amended Motion for Temporary Injunction."[2] D.E. 21. Thereafter, on November 5, 2025, MFG filed its Amended Motion with the Court. D.E. 23.

## IV.   MFG's "Amended Motion"

MFG's "Amended Motion" made a number of major changes (relative to the original) that MFG failed to adequately preview for the Court in its "Notice of Intent."

For example, MFG neglected to address, and perhaps even deliberately concealed, the fact that its original Motion for TRO/PI relied on fabricated case law; this, of course, was the primary impetus for MFG's Notice of Intent. *See generally* D.E. 23. In fact, MFG characterized its fabricated citations as mere "citation errors" – seemingly using its own misconduct to get a 'do-over' on its Motion. D.E. 23 at i.

Additionally, MFG's "Amended Motion" appears to have (unjustly) capitalized upon the benefit of MFG's having already seen Leafwell's Opposition. Indeed, MFG directly addresses, quotes, and even directly responds to, Leafwell's Opposition's arguments; it even refers to certain (out-of-context) quotes from Leafwell as the "record." D.E. 23 at 2. For instance, endeavoring to shore up deficiencies in its original Motion for TRO/PI, MFG's "Amended Motion" now asserts that the

---

[2]      Leafwell did not have an opportunity to respond to MFG's "Notice of Intent" because it was not a motion seeking relief. *See* L.R. 3.01(d) (a "party may respond to a motion within fourteen days").

requested relief is actually "prohibitory" – rather than mandatory. *Compare* D.E. 19 at 8–9 (Leafwell's argument that MFG's Motion is "subject to a particularly high standard of review" because it is seeking to disrupt the alleged status quo), *with* D.E. 23 at i ("The requested relief is prohibitory. . .").

And, ignoring the fact that Leafwell expressly "dispute[d] all of MFG's characterizations and allegations," D.E. 19 at 3 n.1, MFG's "Amended Motion" asserts that Leafwell's Opposition made the record "well-developed" because it contains "admissions"; the "Amended Motion" even has an entire section dedicated to portions of Leafwell's Opposition, captioned "Re: Defendant's Admissions on Record. (*See* Dkt. 19)." *See* D.E. 23 at 2–3.[3] (Of course, none of these statements were admissions because Leafwell's recitation was grounded only on MFG's own allegations and submitted evidence; Leafwell's Opposition repeatedly made this clear (*e.g.*, D.E. 19 at 3 ("Per MFG's papers") and *id.* at 17 ("According to MFG"))).

## V.   The Authenticity of the Allegations in MFG's Verified Amended Complaint is Now Highly Questionable

Because of the apparent use of artificial intelligence ("AI") in MFG's Motion – and in light of counsel's admitted use of AI for drafting (*see* J.S. Dec., Ex. 1 at 6) – Leafwell more recently examined the quoted assertions in MFG's Amended Complaint, which is verified under penalty of perjury. D.E. 3 at 19. In doing this,

---

[3]    Notwithstanding all of the procedural and substantive problems with MFG's conduct, MFG's own logic is internally nonsensical. MFG apparently thinks that it is permitted to unilaterally withdraw its own Motion for TRO/PI from the record, while Leafwell's Opposition remains a part of the record to which MFG is permitted to directly respond.

Leafwell identified a number of inconsistencies that generally mirror the issues within MFG's original Motion for TRO/PI. A few examples illustrate the issue.

First, Exhibit B to the Amended Complaint purports to be a social media post by Leafwell. *See* D.E. 3, Ex. B. In Paragraph 8 of its Amended Complaint, MFG quotes Exhibit B as saying Leafwell's promotions are "tied to commercial arrangements and marketing incentives." But Exhibit B does not remotely say this.

Second, in the same paragraph, MFG also quotes to Exhibit B as stating that Leafwell's conduct "creates an unconscionable, anti-competitive advantage against lawful providers like My Florida Green, who comply with all certification and physician-independence requirements." *Id.* But this is also not in the exhibit. Objectively, these quotations appear to be prompts fed to a large language model for drafting a complaint around a particular theme.

Third, Paragraph 7 of MFG's Amended Complaint states: "Leafwell's own marketing characterizes the program as partnering with dispensaries to **cover the cost** [bold in original] of the physician evaluation (**Ex. I**)." But Exhibit I is an undated press release that makes no reference whatsoever to cost coverage. *See id.*

## VI.    <u>MFG's Counsel's Previous Rule Violations and Sanctions Before this Court</u>

Also relevant here is the fact that MFG's chosen counsel has previously committed a number of Local Rule violations in this Court and has even been sanctioned. Previously, in *Alter Business Advisors, LLC v. The Doc App, Inc., et al.*, No. 2:23-cv-715-JLB-KCD (M.D. Fla.), MFG's counsel violated this Court's local rules

multiple times – which resulted in two stricken pleadings. *See id.* at ECF No. 18 (striking motion for failure to comply with local rules); *id.* at ECF No. 46 (striking filing for failure to comply with local rules). Counsel was also sanctioned in that case for separate conduct. *Id.* at ECF No. 27 (sanctioning counsel for failing to appear at a hearing and "needlessly wast[ing] the time of both the court and opposing counsel").

More recently, in this case – and independent from the primary conduct at issue in the instant motion – MFG has already violated this Court's Local Rules multiple times. To name just a few of those violations: MFG failed to file its Motion for TRO/PI in the appropriate font under Local Rules 3.01(a) and 1.08; had MFG done so, its Motion for TRO/PI would have been approximately 30 pages long – five pages over the page limit. *See* L.R. 3.01(a). Further, MFG's five exhibits are attached to the body of its Motion for TRO/PI and are not separated out into designated exhibits, rendering the as-filed motion 69 pages long, 44 pages over of the page limit. *Id.* MFG's original Motion for TRO/PI also ignores page numbering, and some line-spacing requirements. *See* L.R. 1.08(a). Recognizing several of these deficiencies – at least insofar as the "Amended Motion" for TRO/PI was concerned – this Court *sua sponte* struck MFG's "Amended Motion." *See* D.E. 24.

And the Court subsequently identified the fabricated case law in MFG's original motion and issued an Order to Show Cause (D.E. 25). From Leafwell's perspective, the Order to Show Cause speaks for itself, and thus needs no further discussion. *See id.*

Notably, this conduct is inherently sanctionable. *See Colon v. Twitter, Inc.*, No. 6:18-cv-515, 2019 U.S. Dist. LEXIS 239981, at *6–10 (M.D. Fla. Dec. 2, 2019)

(sanctioning counsel for violating spacing, margin, and page limit requirements because "[t]he Court and counsel for Defendants were forced to spend time and energy addressing those violations . . . The Court also expended additional resources explaining the violations to [the offending party] in its OTSC"). And, more importantly, a "pattern of disregarding court orders and the Local Rules," in and of itself, warrants the "sanction of dismissal." *See O'Brien v. Flick*, No. 24-61529-CIV, 2025 U.S. Dist. LEXIS 10625, at *20 (S.D. Fla. Jan. 10, 2025) (imposing "sanction of dismissal," and noting the party's "pattern of disregarding court orders and the Local Rules"); *Class v. U.S. Bank Nat'l Ass'n*, 734 F. App'x 634, 635 (11th Cir. 2018) ("A district court has authority to dismiss actions for failure to comply with local rules.").

## ARGUMENT

MFG should not be allowed to leverage its own misconduct in order to (effectively) get a 'do-over' on its Motion for TRO/PI, nor to avoid sanctions. To that end, Leafwell respectfully requests that this Court to impose the following sanctions: (i) award Leafwell attorneys' fees incurred in responding to MFG's Motion for TRO/PI (and in compiling and submitting any ensuing fee application within 45 days, *see* L.R. 7.01(c)); (ii) deny any forthcoming motion for TRO/PI with prejudice; (iii) award Leafwell its fees in preparing this Motion for Sanctions; (iv) dismiss MFG's entire lawsuit with prejudice; and (v) impose any other relief as this Court deems appropriate. The specific grounds for these requests are articulated in detail below.

## I.    MFG Should be Sanctioned for its Misconduct

MFG appears to have improperly relied upon AI to draft its Motion for TRO/PI, as is evidenced by the numerous hallucinated citations within its filing, as well as the fact that the document appears to have been written in a "formulaic, sing-song manner—seemingly lifelike on the surface, yet devoid of much substantive legal argument on the merits—the tell-tale hallmarks of generative AI work product." *See O'Brien*, 2025 U.S. Dist. LEXIS 10625, at *14 n.5.[4]

Even if MFG were eventually permitted to amend its Motion for TRO/PI, any such amended motion would not absolve it of sanctions liability. *Monster Energy Co. v. Owoc*, No. 0:24-cv-60357, D.E. 54 at 1–3 (S.D. Fla. Aug. 14, 2025) (sanctioning *pro se* litigant who cited eleven instances of fictitious or false cases, notwithstanding the amended filing and explaining that "[w]hile the Court appreciates Mr. Owoc's candor and commitment to correcting his mistakes, the Court nonetheless determines that sanctions are warranted"). *Hsien Chueh Yao v. Univ. of S. Fla. Bd. Of Trs.*, No. 8:24-cv-2877-MSS-NHA, 2025 U.S. Dist. LEXIS 113006, at *5–6 (M.D. Fla. June 13, 2025) (striking both the original filing that contained fake case citations and "corrected" filing, and warning further violations of duty of candor "will result in sanctions").

**A. The Submission of AI-Hallucinated Citations Warrants Severe Sanctions**

To be clear, "the submission of" even a single "hallucinated, fake case citation supposedly supporting a principle of law" is, and should be, taken "very seriously" –

---

[4] Among other things warranting the Court's attention in connection with the instant Motion is MFG's apparent effort to – at least initially – conceal its misconduct from the Court; such concealment may have led to this Court's granting the apparent request in MFG's Notice of Intent and withdrawing the original Motion. D.E. 21. In that Notice of Intent (D.E. 20), MFG stated that its "renewed motion" would by "supported by. . . corrected citations." *Id.* ¶ 2. It said nothing about the real issue, here. *Id.*

because it constitutes "a serious misrepresentation to the Court and to opposing counsel." *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-cv-81140, 2025 U.S. Dist. LEXIS 98418, at *20 (S.D. Fla. May 20, 2025) ("Judges . . . need to be able to rely upon competent counsel to submit . . . papers containing accurate and supported arguments, facts, and case law."). The resulting harms are substantial; the use of a hallucinated citation causes the "opposing party" to "waste[] time and money in exposing the deception," the "Court's time is taken from other important endeavors," the "client may be deprived of arguments based on authentic judicial precedents," and there is "potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct." *Byoplanet Int'l, LLC v. Johansson*, No. 25-cv-60630, 2025 U.S. Dist. LEXIS 144449, at *5 (S.D. Fla. July 15, 2025). More broadly, such misconduct "promotes cynicism about the legal profession and the American judicial system," and might cause a "future litigant [to] be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity." *Id.*

Additionally, lawyers have a duty of candor to the Court – meaning that they must always "act with reasonable diligence" in their filings, and they must refrain from "engag[ing] in misrepresentation to a court." *Id* at *18 (citing Fla. R. Reg. Fla. Bar 4-1.3, 4-3.3, and 4-8.4(c)).[5] Accordingly, they "must always conduct a reasonable" and

---

[5] In fact, commentary to Fla. R. Reg. Fla. Bar 4-1.1 specifically requires attorneys to "understand[]" the "**benefits and risks associated with the use of technology, <u>including generative artificial intelligence</u>.**" Fla. R. Reg. Fla. Bar 4-1.1, Comment, Maintaining Competence (amended Aug. 29, 2024, effective Oct. 28, 2024) (emphasis added).

diligent inquiry into their citations – to ensure that they are fulfilling their duty of candor. *Id* at *24; *see also* Fla. R. Reg. Fla. Bar 4-1.3. Therefore, "attorneys using AI tools without checking on the accuracy of their output are responsible for the consequences of incorporating inaccurate information into their work product." *Versant Funding LLC*, 2025 U.S. Dist. LEXIS 98418, at *12 (citation omitted). When attorneys submit "hallucinated cases and quotations," it means that they "did not act with reasonable diligence and engaged in obvious misrepresentation to the Court" – which "violate[s] Florida Bar Regulation 4-1.1." *See Byoplanet*, 2025 U.S. Dist. LEXIS 144449, at *26–27; *see, e.g., O'Brien*, 2025 U.S. Dist. LEXIS 10625, at *15 (breach of duty of candor by filing memorandum "based in part on non-existent case law").

For these reasons, Courts routinely impose severe "sanctions against parties who submit fake citations." *Sheets v. Presseller*, No. 2:24-CV-495-JLB-KCD, 2025 U.S. Dist. LEXIS 43320, at *5 n.3 (M.D. Fla. Mar. 11, 2025); *see also Byoplanet*, 2025 U.S. Dist. LEXIS 144449, at *24 ("Strong sanctions against the undiligent, unverified use of AI will deter lawyers from blindly relying on AI"). In doing so, courts "assign[] significant value to the deterrent function" of such sanctions in this context – with one court observing that the circumstances may warrant severe sanctions because "[i]t has become clear that basic reprimands and small fines are not sufficient to deter this type of misconduct." *United States v. McGee*, No. 1:24-cr-112-TFM, 2025 U.S. Dist. LEXIS 201350, at *24-25 (S.D. Ala October 10, 2025). Even one single hallucinated citation, by itself, necessarily warrants sanctions. *See Versant Funding LLC*, 2025 U.S. Dist.

LEXIS 98418, at *20 (imposing sanctions including attorneys' fees, CLE attendance, and a fine for citing to *one* hallucinated case).

And parties do not do themselves any favors before the court when they endeavor to downplay, or conceal, their prior use of fabricated citations. *See Hsien Chueh Yao v* 2025 U.S. Dist. LEXIS 113006, at *5–6. (plaintiff breached duty of candor by (1) "represent[ing] that all the cases cited [in the "original opposition"] existed and supported Plaintiff's position" and then (2) seeking to file a corrected brief to fix "citation-related" and "formatting" "errors"); *United States v. Stephens*, No. 23-CIV-80043, 2025 U.S. Dist. LEXIS 199774, at *13 (S.D. Fla August 6, 2025) (noting that the *pro se* litigant improperly "downplay[s] his non-existent citations as mere 'inadvertent error,'" and imposing sanctions).

Also relevant here is attorneys' overarching "obligation to . . . maintain[] a professional, courteous, and civil attitude toward all persons involved in the legal system," including one another. *See* Fla. R. Reg. Fla. Bar, Preamble: A Lawyer's Responsibilities. Failing to adhere to this obligation is itself sanctionable. *See Holland v. Westside Sportsbar & Lounge, Inc.*, No. 6:19-cv-945-Orl-41GJK, 2019 U.S. Dist.LEXIS 17688, at *6-7 (M.D. Fla. Dec. 6, 2019) (sanctions levied because "[t]he use of insults, swearing, and extreme responses to seemingly routine requests serves no purpose and is highly inappropriate"); *Paylan v. Bondi*, No: 8:15-cv-1366-T-36AEP, 2015 U.S. Dist. LEXIS 172968, *9 n.5 (M.D. Fla. Dec. 30, 2015) ("Name-calling," including for instance "greed[y]," "malicious," and "arrogan[t]," "by any party will not be tolerated by this Court and may result in the imposition of sanctions.").

Depending on the extent of the violations, as well as the offender's past conduct, courts' sanctions may include a number of (non-mutually-exclusive) remedies; these include attorneys' fees (for the opposition and motion for sanctions), required CLE attendance, public reprimand, referral to the state bar, and also the dismissal with prejudice of the entire action. *See, e.g., O'Brien*, 2025 U.S. Dist. LEXIS 10625, at *20 ("This Court also finds that [the] submission of fake authorities, combined with [the] failure to candidly acknowledge that mistake along with his pattern of disregarding court orders and the Local Rules, warrants the imposition of the sanction of dismissal."); *Byoplanet*, 2025 U.S. Dist. LEXIS 144449, at *29-31 (imposing sanctions including dismissal with prejudice, attorneys' fees, and public reprimand for repeated use of false case citations); *Quezaire v. Technipower Inc.*, No. 1:24-cv-03733-ELC-RDC, 2025 U.S. Dist. LEXIS 208947, at *11-12, *28 (N.D. Ga October 23, 2025) (sanctioning litigant and dismissing case with prejudice); *McGee*, 2025 U.S. Dist. LEXIS 201350, at *4, 25 (imposing sanctions including public reprimand, imposition of fines, and referral to the state bar where counsel cited "several nonexistent cases, attribute[ed] false quotations to others, and direct[ed] this Court to precedent that the Supreme Court reversed more than 40 years ago").

Courts derive their inherent authority to impose such sanctions from any one of several different sources. One source is the court's "'inherent powers, . . . to manage [its] own affairs." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (cleaned up). Such powers include imposing sanctions, after a finding of bad-faith conduct. *See Versant Funding LLC*, 2025 U.S. Dist. LEXIS 98418, at *9 (citing

*McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x. 930, 931 (11th Cir. 2006)). Conduct need not be "purposeful" to constitute bad-faith; indeed, "a filing that is both reckless and frivolous can constitute bad faith." *Versant Funding LLC*, 2025 U.S. Dist. LEXIS 98418, *18 (imposing sanctions where counsel was "careless, negligent, and reckless" due to a lack of accuracy because it did not "ensur[e] the accuracy of the case citation" and "principle of law"); *Byoplanet*, 2025 U.S. Dist. LEXIS 144449, at *17; *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223-25 (11th Cir. 2017).

And those filings that contain fake citations necessarily qualify. *See McGee*, 2025 U.S. Dist. LEXIS 201350, at *20-21 (explaining that "the insertion of bogus citations is not a mere typographical error, nor the subject of reasonable debate"; "[i]t is just wrong"). Those circumstances often warrant dismissal of the underlying action with prejudice. *See, e.g., Williamson v. TransUnion LLC*, No. 3:24-cv-43-WWB-PDB, 2025 U.S. Dist. LEXIS 150331,*5, *18 (M.D. Fla. Aug. 5, 2025) (explaining that "a court's inherent power is for "'rectifying disobedience' and 'vindicating judicial authority,'" and issuing sanctions and dismissing *pro se* litigant's case with prejudice due to litigant's "citations to non-existent cases, misquotes of cases, misrepresentations of case holdings . . . [and] repeated rule violations"); *Byoplanet*, 2025 U.S. Dist. LEXIS 144449, at *24–25 (dismissing case without prejudice and without leave to amend pursuant to court's inherent authority, due to party's fake case citations).

Another source of the power to sanction is Fed. R. Civ. P. 41(b), which provides that an action may be dismissed if the plaintiff "fails . . . to comply with" applicable rules or orders. Fed. R. Civ. P. 41(b). *See, e.g., Quezaire*, 2025 U.S. Dist. LEXIS 208947,

at *12, *28 (sanctioning *pro se* litigant and dismissing case with prejudice). And per the U.S. Court of Appeals for the Eleventh Circuit, a "failure to comply with local rules" will suffice. *See Class v. U.S. Bank Nat'l Ass'n*, 734 F. App'x 634, 635 (11th Cir. 2018).

Monetary sanctions can also be issued "under 28 U.S.C. § 1927" – for "practices that unnecessarily delay or increase the complexity of the litigation." *Versant Funding LLC*, 2025 U.S. Dist. LEXIS 98418, at *9-10. Title 28 U.S.C. § 1927 sanctions are appropriate where the offending party's "unreasonable and vexatious conduct . . . multiplied the proceedings." *Versant Funding LLC*, 2025 U.S. Dist. LEXIS 98418, at *10 (citing *Goode v. Wild Wing Cafe*, 588 F. App'x 870, 874 (11th Cir. 2014)).

And finally, Local Rule 2.04(a), gives the Court the power to "disbar, suspend, reprimand, or otherwise discipline a member of the Middle District bar."

### B. Given MFG's Misconduct, this Court Should Impose Sanctions Upon It

As detailed above, MFG purported to support its Motion for TRO/PI using fake caselaw, quotations, and citations. (*See* "Background": Section I, *supra.*) It did so twelve different times. And it did so after (i) violating the local rules of this Court in this case, and (ii) having been sanctioned and admonished by this Court in a different, recent case. (*See* "Background": Section IV, *supra*; "Argument": Section I, *supra.*)

Then, after Leafwell brought the hallucinated citations to MFG's attention (in its effort to meet and confer on the instant Motion), MFG's counsel immediately reaffirmed the propriety of its prior conduct without hesitation; MFG referred to its "diligen[t]" cite-checking process – informing Leafwell that MFG had "verified" "[e]very citation and quotation in [MFG's] TRO/PI papers" by "compar[ing]" "[e]ach

quoted passage is compared word-for-word to the official reporter." *See* J.S. Dec., Ex. 1 at 6. Hours later, MFG downplayed its own misconduct – referring to the AI-generated hallucinated fake citations as mere "technical citation issues." *Id.* at 3–4.

And throughout the parties' correspondence, MFG's counsel made gratuitous remarks directed at Leafwell's lead counsel of record, Ms. Stafford – perhaps in an effort to intimidate her into refraining from filing the contemplated sanctions motion. On October 28, 2025, MFG stated that Ms. Stafford's meet-and-confer email was made of "childish unsupported demands," and that Ms. Stafford should "[d]o [he]r job and draft a proper response." *Id.* at 7. On October 30, 2025, MFG directly addressed the two (male) attorneys who were admitted pro hac vice into this case (D.E. 16), suggesting that those attorneys should "educate her" (Ms. Stafford). *Id.* at 1. In that same email, MFG's counsel asked to "talk to the attorney that actually has some authority in this case" – asserting that, in identifying MFG's sanctionable hallucinated case citations and attempting to fulfill Leafwell's conferral obligations, Ms. Stafford was "just throwing whatever at the wall and seeing what sticks." *Id.*

Meanwhile, MFG tried to conceal – or, at the very least, substantially downplay – its own misconduct to this Court. Likely trying to avoid being sanctioned, MFG filed a "Notice of Intent to File Amended Motion for Temporary Injunction," purporting to "withdraw[] its prior motion to "permit the filing of a renewed motion supported by revised representations, corrected citations, additional legal support, and evidentiary support." D.E. 20. Presumably taking this representation at face value, the Court took the requested action and withdrew MFG's initial Motion. *See* D.E. 21.

Ultimately, MFG's reliance upon twelve hallucinated or false citations warrants severe sanctions, as do its subsequent efforts to cover up that conduct, as do its ensuing communications with Leafwell's counsel. This, especially when combined with its pattern of Local Rules violations, warrant severe sanctions against MFG.

### C. The Specific Sanction of Dismissal is Further Warranted Because MFG's Amended Complaint Bears the Same Hallmarks of AI-Generation

Shortly after discovering MFG's fabricated citations, and also then receiving MFG's admission to using AI (*See* J.S. Dec., Ex. 1 at 6), Leafwell discovered factual inconsistencies and fundamental legal problems in MFG's Amended Complaint – issues that (at least) suggest that it was also drafted by AI. Additionally, even to the extent that AI may have been used by MFG in drafting the Amended Complaint, it would be extremely difficult for Leafwell and this Court to take seriously any representation by MFG about its diligent quality control. *See id.* ("Every citation and quotation in our TRO/PI papers was verified directly against the official reporters."). Consequently, Leafwell (and, by extension, the Court) will be put in the position of having to assume the truth of potentially fabricated AI-generated allegations if this litigation should continue. *See generally* Fed. R. Civ. P. 12(b)(6). This, in addition to the fact that a dismissal is well-within the bounds of permissible sanctions in this context, weigh in favor of dismissal.

In *Byoplanet Int'l, LLC v. Johansson*, the responding attorney admitted to using AI for drafting complaints – pleadings that necessarily contained allegations that the court "must (as a matter of law) take as true" for a Fed. R. Civ. P. 12(b)(6) motion. *See*

2025 U.S. Dist. LEXIS 144449, at *25–26. Per the court, this irresponsible and acknowledged use of AI was cause for "extreme concern[ ]" that the underlying factual allegations – within the Complaint – may have been hallucinated or unverified as well. *See id.* at * 26. The court imposed the sanction of dismissal pursuant to its inherent authority, explaining: "Neither the Defendants nor the Court should be made to analyze and respond to factual allegations in Complaints that may have been wholly made up by generative AI—when the attorney's signature has been affixed to representations that are fake and worthless across so many filings (purporting to indicate the factual contentions have or will have evidentiary support)." *Id.* at *26

Here, on top of MFG's admission to using AI when drafting, its numerous violations of local rules, and the fabricated citations, its Amended Complaint is not coherently drafted – thereby further warranting dismissal with prejudice. As previously discussed, there are a number of direct quotes that MFG's Amended Complaint states are contained in certain exhibits that do not actually contain them. (*See* "Background": Section V, *supra.*) Given everything, it appears likely that MFG provided an AI model with materials, instructed it to draft a complaint around a theme, and then did not adequately independently verify the contents of the AI-generated document.

Moreover, the Amended Complaint's underlying legal propositions are also rife with fundamental deficiencies – suggesting that there was no human vetting at all. For instance, neither Fla. Stat. §§ 817.505 nor Fla. Stat. 381.986(3)(b) afford a private right of action; and yet, MFG – a private entity – is trying to sue in order to enforce (its own

interpretation of) what those statutes require.[6] And, even the most basic human-lawyer-run diligence would have revealed that these statutes cannot validly serve as the basis for MFG's request for declaratory judgment (*see* D.E. 3 ¶¶ 35-29 (Count V)). *See Rosenberg v. Blue Cross & Blue Shield of Fla., Inc.*, 2019 U.S. Dist. LEXIS 15461, at *12 (M.D. Fla. Jan. 31, 2019) ("Many courts, including the Eleventh Circuit, have held that a claim for declaratory relief must be dismissed where there is no private right of action available for an alleged statutory violation."). Similarly, MFG brings an Unjust Enrichment Claim (D.E. 3 ¶¶ 25-28 (Count III)) while acknowledging that MFG never directly conferred any benefits onto Leafwell – a fundamental prerequisite for an Unjust Enrichment claim. *See Pop v. Lulifama.com LLC*, No. 8:22-cv-2698-VMC-JSS, 2023 U.S. Dist. LEXIS 125429, at *15 (M.D. Fla. July 20, 2023) (citation omitted) ("[T]he benefit conferred on the defendant must be a direct benefit.").

These are just a few examples. Leafwell should not be forced to respond to Plaintiff's Complaint when it most likely was left unvetted after being drafted by AI.[7]

## CONCLUSION AND REQUESTED RELIEF

For all of these reasons, Leafwell hereby respectfully requests the following sanctions: (i) award Leafwell attorneys' fees incurred in responding to MFG's Motion for TRO/PI (and in compiling and submitting any ensuing fee application within 45 days, *see* L.R. 7.01(c)); (ii) deny any forthcoming Motion for TRO/PI with prejudice;

---

[6]    This Court has explained that this is a "noteworthy discrepanc[y]." D.E. 25 at 2.
[7]    Dismissal with prejudice is also warranted here, where MFG has already had its "one chance" to amend its pleading. *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

(iii) award Leafwell its fees in preparing this Motion for Sanctions; (iv) dismiss MFG's entire lawsuit with prejudice; and (v) impose any other relief as this Court deems fit.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that, on October 28, 2025, MFG's Counsel of Record advised that it opposes Leafwell's motion for sanctions and opposes Leafwell's request for any category of sanctions sought herein.

Dated:  November 6, 2025

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Jody A. Stafford*
Jody A. Stafford, Esq.
Florida Bar Number: 1015797
jody.stafford@us.dlapiper.com
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone:  (305) 702-8890

Paul B. Lewis, Esq.
Admitted *pro hac vice*
paul.lewis@us.dlapiper.com
Kevin M. Bergin, Esq.
Admitted *pro hac vice*
kevin.bergin@us.dlapiper.com
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110
Telephone: (617) 406-6000