UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE DOC APP, INC. d/b/a MY
FLORIDA GREEN, a Florida
corporation,

      Plaintiff,

v.                              Case No.:  2:25-cv-838-SPC-NPM

LEAFWELL, INC., a Delaware
corporation,

      Defendant.

---

## OPINION AND ORDER

On November 6, 2025, the Court entered an Order to Show Cause against Jason Castro, counsel for Plaintiff The Doc App, Inc. d/b/a My Florida Green, as to why he should not be sanctioned for his numerous misrepresentations of legal authority to the Court in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") (Doc. 17).  (Doc. 25).  Following that Order, a flurry of motion practice ensued.  Accordingly, this case is again before the Court on several filings:[1]

    1. Defendant's Motion for Sanctions Against Plaintiff (Doc. 26);

---

[1] The Court does not separately address the merits of each filing but has reviewed everything in determining whether to impose sanctions.  Plaintiff has not responded to Defendant's motions.  But Plaintiff has already voluntarily dismissed the case, and regardless, the Court does not need responses to rule on the motions.

2.  Plaintiff's Response to Order to Show Cause (with Conditional Request for Fees Under Rule 11(c)(2)) (Doc. 30);

3.  Plaintiff's Notice of Voluntary Dismissal ("Notice") (Doc. 31);

4.  Defendant's Motion for Leave to File Reply Brief and Also to Broaden Its Prior Request for Sanctions (Doc. 32);

5.  Defendant's Request for Oral Argument (Doc. 33); and

6.  Defendant's Motion to Strike Plaintiff's Notice of Voluntary Dismissal (D.E. 31) Or, In the Alternative, Motion to Impose Pre-filing Injunction (Doc. 34).

## Background and Procedural History

According to Plaintiff, Defendant's pop-up events offering free medical marijuana certifications violate Florida law because Defendant uses dispensary funding to subsidize physician fees. (Doc. 3). So on September 15, 2025, Plaintiff sued Defendant in state court for a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla Stat. § 501.204 (count I), tortious interference with business relationships (count II), unjust enrichment (count III), civil conspiracy (count IV), and declaratory and injunctive relief (count V). Defendant removed the case on September 19, 2025. (Doc. 1).

Plaintiff then filed its Motion for TRO. (Doc. 17). Plaintiff requested that the Court enjoin Defendant from conducting or participating in any dispensary-funded or "free" medical marijuana certification events or

2

promotions in Florida; using or disclosing patient information in violation of privacy laws; and engaging in any advertising or practice that violates Florida Statutes §§ 817.505, 381.986(3)(b), or 501.204.

Defendant identified several areas of serious concern in its response to the motion. (Doc. 19). It pointed out that §§ 817.505 and 381.986(3)(b) create no private right of action. (*Id*. at 11–12). Worse, Mr. Castro included in the motion "two completely fabricated cases, four purported quotes to cases that do not contain anything resembling those quotes, and six instances where [Plaintiff] cites to cases that have nothing whatsoever to do with the stated proposition." (*Id*. at 1). Two days later, Plaintiff withdrew the Motion for TRO. (Doc. 20). It filed another (Doc. 23), which the Court struck for failure to comply with the Civil Action Order (Doc. 24).

The Court confirmed several of Defendant's claims about Plaintiff's dubious citations and issued an Order to Show Cause to Mr. Castro as to why he should not be sanctioned for his numerous misrepresentations of legal authority to the Court and why he should not pay Defendant's legal fees and costs incurred responding to the motion.[2] (Doc. 25). The same day, Defendant filed a motion for sanctions. (Doc. 26).

---

[2] The Court did not cite Rule 11 in its Order to Show Cause. But based on the language the Court used, directing Mr. Castro to "show cause as to why he should not be sanctioned for his numerous misrepresentations of legal authority to the Court and why he should not pay Defendant's legal fees and costs incurred responding to the motion," (Doc. 25), the Court is

On November 10, 2025, Mr. Castro responded to the Order to Show Cause (Doc. 30) and dismissed this case under Federal Rule of Civil Procedure 41(a)(1)(A)(i) (Doc. 31). As Defendant had not served an answer or a motion for summary judgment, dismissal was procedurally proper. Once Plaintiff filed the Notice, the action was no longer pending, and the Court was deprived of jurisdiction over the merits of the case. The Defendant filed three more motions concerning Mr. Castro's response, oral argument on sanctions, and additional requested sanctions. (Docs. 32–34).

## Legal Standard

While sanctions are reviewed for abuse of discretion, *sua sponte* Rule 11 sanctions are reviewed with "particular stringency." *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1351 (S.D. Fla. 2025) (quoting *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)). Federal Rule of Civil Procedure 11 provides:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of

---

satisfied that Mr. Castro understood the basis for the Order to Show Cause and that it has complied with Rule 11.

Additionally, the Civil Action Order requires that "all counsel and parties must comply with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Middle District of Florida, the Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida, the United States District Court for the Middle District Florida's Administrative Procedures for Electronic Filing, the Florida Bar Professionalism Expectations, and the Florida Bar Trial Lawyers Section's Guidelines for Professional Conduct." (Doc. 5 at 11). This, of course, includes Rule 11.

4

> the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b)(2).

On its own initiative, a court can impose an appropriate sanction on an attorney who violates Rule 11(b). *See* Fed. R. Civ. P. 11(c)(1), (3). "However, district courts are forbidden from imposing monetary sanctions on a *party* for a violation of Rule 11(b)(2), *i.e.*, when a pleading advances a legal theory that is unwarranted under existing law or a nonfrivolous extension of existing law." *Tacoronte v. Cohen*, 654 F. App'x 445, 449 (11th Cir. 2016) (citing Fed. R. Civ. P. 11(c)(5)(A) (emphasis in original)). Because Rule 11 court-initiated sanctions do not involve the "safe harbor" opportunity to withdraw or correct a submission challenged in a court-initiated proceeding, the initiating court must employ a higher standard ("akin to contempt") than in the case of party-initiated sanctions.[3] *Kaplan*, 331 F.3d at 1255 (citation omitted). "Sanctions ought to be effective deterrents that prevent repetition of the punished

---

[3] Given this legal framework, Mr. Castro's withdrawal of the Motion for TRO and the Court's endorsed order withdrawing the motion before the entry of the Order to Show Cause are of no moment. (Docs. 20, 21, 25; Doc. 30 (Mr. Castro acknowledges "the Court retains discretion to address conduct notwithstanding withdrawal[.]").

conduct." *ByoPlanet*, 792 F. Supp. 3d at 1352 (citing *Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at *8 (11th Cir. Oct. 19, 2021)). "These sanctions are exceedingly flexible, and can include attorneys' fees, required educational courses, formal reprimands, apologies to the represented parties, reimbursement of plane tickets, or even community service." *Id.* (citations omitted).

## Analysis

Given the unusual, rapid procedural developments in this case, the Court first examines whether it can order sanctions given Plaintiff's voluntary dismissal. In short, the Eleventh Circuit confirms it can. "Reading [Rule] 41(a), *Cooter & Gell* [*v. Hartmarx Corp.*, 496 U.S. 384 (1990)], and our case law together, it is clear that even when a voluntary dismissal disposes of an entire action, district courts retain jurisdiction to consider at least five different types of collateral issues: costs, fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards." *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021). Further, a court need not conduct a hearing before imposing Rule 11 sanctions. *Cf. Didie v. Howes*, 988 F.2d 1097, 1105 (11th Cir. 1993) (recognizing Rule 11 does not mandate a hearing, though a hearing would give the district court a basis to rule on sanctions motion). A court must not impose a monetary sanction on its own

"unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal[.]"  Fed. R. Civ. P. 11(c)(5)(B).

Having already expended considerable judicial resources reviewing the filings, the Court issued the Order to Show Cause four days *before* Plaintiff dismissed the case.  (Doc. 25).  The Court determines a sanctions hearing is neither legally required nor necessary.  Under these circumstances, the Court retains jurisdiction to impose Rule 11 sanctions.

The Court finds that Mr. Castro violated Rule 11(b) in filing the Motion for TRO and imposes sanctions.   His motion contained fabricated citations, citations that do not contain quoted language, and citations that do not relate to the purported proposition.  *See Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *4 (S.D. Fla. May 20, 2025). ("The filing by an attorney of a . . . motion . . . in court without checking the accuracy of the case citations and the proposition the case supports, resulting in a fake case citation being presented to the Court, violates an attorney's legal and ethical duties and obligations.").  While Mr. Castro purports to "own" his mistakes and uses words like "respectfully," his defiant tone and condescending communications with and about his opposing counsel, Jody A. Stafford, undermine any supposed respectful sentiment.  (Doc. 30 at 1).  Rather than take responsibility for the legal inaccuracies permeating his Motion for TRO, Mr. Castro's response to the Order to Show Cause is as

colossal a collection of excuses and projection as the Court has seen in 25 years on the bench.

Here are a few examples. He claims that *Henson v. Allison Transmission, Inc.* exists. (Doc. 30 at 3). The Court checked his original citation in the Motion for TRO. The *Henson* citation in the original motion—No. 6:16-cv-1223-Orl-41DCI, 2017 WL 59085 (M.D. Fla. Jan. 5, 2017)—does not exist. Sidestepping the issue, Mr. Castro explains that he *intended* to cite *Henson v. Allison Transmission,* No. 07-80382-CIV, 2008 WL 239153, (S.D. Fla. Jan. 28, 2008). (Doc. 30 at 3). That case does exist. But it does not matter what counsel intended to cite. It is neither the Court's nor opposing counsel's job to identify his fake citations and intuit what he meant.

Anyway, the Court read the version of *Henson* that Mr. Castro claims

> stands for the proposition that a party may pursue injunctive relief when continued harm to its business and customer base is likely without court intervention. It discusses the court's authority to act where equity demands it, even in early stages of litigation. The citation error was clerical—not substantive. A copy of this case is incorporated hereto as **Exhibit A**.

(Doc. 30 at 7–8; Doc. 30-1). Defendant argues that this version "does not concern injunctive relief whatsoever." (Doc. 32 at 2 n.2). Yet again, Defendant is correct. Mr. Castro's inaccurate characterization of *Henson* is beyond perplexing. The *Henson* he intended to cite does not stand for the proposition in his original explanatory parenthetical: "conduct violating established

regulations is unfair under FDUTPA." (Doc. 17 at 10). Rather, *Henson* concerns a plaintiff's request to review his lemon law case and involves breach of warranty-based claims, the Magnuson-Moss Warranty Act, and the Uniform Commercial Code. *See Henson*, 2008 WL 239153, at *2. The word "injunction" does not appear once. Nor do the terms "unfair," "deceptive," "FDUTPA," or "regulation." Ultimately, Mr. Castro misrepresents *Henson* to the Court not once, but twice.

Next, the Court observed that Plaintiff's citation to *State Farm Mut. Auto. Ins. Co. v. Pressley*, 727 So. 2d 1019, 1020 (Fla. 3d DCA 1999), yields nothing in a Westlaw search. (Doc. 25 at 2). In response, Mr. Castro says that the case does exist, but he meant to cite 28 So. 3d 105 (Fla. 1st DCA 2010). (Doc. 30 at 3). Again, he attaches the case to his response and claims the "citation error was clerical, not substantive." (*Id.* at 4; Doc. 30-2). The Court disagrees.

The citation to 727 So. 2d 1019, 1020 (Fla. 3d DCA 1999) and not 28 So. 3d 105 (Fla. 1st DCA 2010) is no mere clerical error. Mr. Castro cited the wrong reporter, court, and year, and the supposedly correct case does not contain the phrase that he quoted ("any form whatsoever") or mention the statute he claims the case concerns (Fla. Stat. § 817.505). This goes well beyond a clerical error. Thus, his assertion that "*Pressley* supports the proposition for which it was cited" is another misrepresentation to the Court. (Doc. 30 at 4).

9

Third, the Court confirmed that Mr. Castro quoted language that did not appear in at least two cases cited. (Doc. 25 at 3). Mr. Castro attempts to explain this away, saying he "inadvertently" filed an early draft of the motion and did not remove the quotation marks after converting the quotations to paraphrases. (Doc. 30 at 4–5). But these are not—as Mr. Castro describes— mere "formatting" or "drafting error[s]." (*Id.* at 5). Rather, they are repeated representations by a lawyer to the Court that cases contain specific language when they do not. If these were the only issues with the motion, perhaps the Court might be more lenient. But in the context of the litany of misrepresented authority, leniency is not the order of the day.

Mr. Castro blames the serious issues in his motion on mistakes, inadvertent filings, and clerical errors, among other things. In his response to the Court, he doubles down, concluding "[t]here is no misconduct to explain or address." (Doc. 30 at 8). For all the reasons discussed above, the Court is unconvinced. So what really happened?

Defendant posits he used artificial intelligence ("AI") to draft his filings (Doc. 26 at 11),[4] but Mr. Castro remains silent on his use of AI to litigate this case in his response to the Order to Show Cause. This silence particularly

---

[4] In fact, Defendant argues that Plaintiff's Verified Amended Complaint and his response to the Order to Show Cause also bear hallmarks of AI-generated work product. (Doc. 32 at 2 n.1).

troubles the Court, as Mr. Castro's excuses about how the Motion for TRO could possibly contain so many misrepresentations simply make no sense. His reckless use of AI, however, would explain things.

Mr. Castro conceded in an email to opposing counsel that he uses "AI tools only to assist with drafting and document organization . . . but all legal analysis and final language are human-authored and attorney-verified." (Doc. 26-2 at 7). Further, he stated that he checks his work by pulling every case from Westlaw, opens it in full text, reviews it for context, accuracy, and proper pin cites. (*Id.*). He adds that "[e]ach quoted passage is compared word-for-word to the official reporter," and he "then run[s] Quick Check/KeyCite to confirm that every authority is valid and correctly characterized." (*Id.*). Given the volume and nature of the misrepresentations in the Motion for TRO and his response to the Court, these statements made to opposing counsel lack any credibility. The Court finds that he has taken no responsibility for his actions.

To wit, Mr. Castro turns his unconvincing defense into blustering offense, asking the Court to impose sanctions on Defendant under Rule 11(c)(2). (Doc. 30 at 1). He baselessly accuses Ms. Stafford of lacking professionalism, lacking candor toward the Court, and mischaracterizing the record. (*Id.* at 2, 8). The Court will not entertain his meritless request any further.

In sum, the Court is unpersuaded that Mr. Castro's misrepresentations of legal authority resulted from mere errors. Every lawyer is an officer of the court and always has a duty of candor to the tribunal. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808–09 (11th Cir. 2003) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). "Citing imprecise, non-existent legal authority breaches [a litigant's] duty of candor." *United States v. Stephens*, No. 23-CIV-80043, 2025 WL 2840746, at *3 (S.D. Fla. Aug. 7, 2025); *see Sheets v. Presseller*, No. 2:24-CV-495-JLB-KCD, 2025 WL 770592, at *2, n.3 (M.D. Fla. Mar. 11, 2025) ("The imposition of sanctions against parties who submit fake citations is common.") (citation omitted). His misrepresentations constitute "repeated, abusive, bad-faith conduct that cannot be recognized as legitimate legal practice and must be deterred." *ByoPlanet*, 792 F. Supp. 3d at 1351.

So what are the proper sanctions here? Under Rule 11(c)(4),

> a sanction . . . must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). Defendant asks the Court to strike the Notice, arguing it is an ill-disguised attempt to forum-shop and avoid sanctions. (Doc. 34 at 6). In the Notice, Plaintiff states that it has identified other dispensaries and

medical providers it wants to join as defendants in state court. (Doc. 31). Plaintiff defensively argues that dismissal is "not sought for delay or gamesmanship and is not an attempt to evade judicial scrutiny." (*Id.* at 2). Not buying this explanation, Defendant wants harsh sanctions, such as dismissal with prejudice or the imposition of a pre-filing injunction against future litigation.

The Court has carefully considered all options. On this record, the Court will not administer the ultimate sanction against Mr. Castro's client by striking the Notice. However, Mr. Castro's misrepresentations to the Court and refusal to take responsibility for them require strong sanctions. Accordingly, Mr. Castro must pay Defendant its attorneys' fees and costs incurred in responding to the Motion for TRO and in compiling and submitting any ensuing fee application within 45 days, *see* Local Rule 7.01(c). Additionally, the Court determines that his referral to the Florida Bar for appropriate discipline and other sanctions listed below are appropriate.

Accordingly, it is now

**ORDERED:**

1. Pursuant to Rule 11, Jason Castro is **ORDERED** to pay the attorneys' fees for defense counsel in this case for all time spent responding to the Motion for TRO. The parties shall promptly confer and attempt in good faith to determine and agree upon the reasonable

attorneys' fees and costs that were incurred by defense counsel in this regard.  The parties shall then file a joint notice **no later than December 22, 2025,** stating whether they have been able to agree upon the fees and costs to be paid, and if so, the specific amount agreed upon, and the payment schedule.  The Court will then issue any further Order as deemed necessary.  If the parties and their counsel cannot agree on a reasonable amount of fees and costs or a payment schedule, they shall file separate notices on or before **December 22, 2025**, stating the nature of the dispute over the fees and costs (whether it involves the time incurred, hourly rate, or other issues) and their respective positions.  The Court will determine the amount of the attorney's fees and costs (including those incurred compiling and submitting any fee application) to be paid to Defendant by Jason Castro and issue any appropriate further orders.

2. If Jason Castro files any case in or removes any case to the Middle District of Florida **within the next two years of the date of this Order**, he must attach a copy of this Order to his Complaint or Notice of Removal.  *See Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1317 (11th Cir. 2021) (finding no abuse of discretion where a district court ordered an attorney to include a copy of a sanctions order in any future ADA complaint the attorney filed).

3. Jason Castro is **DIRECTED** to attend an in-person Florida CLE concerning legal ethics and artificial intelligence by **January 30, 2026**. He must file a certificate of completion on the docket by **February 20, 2026**.

4. Jason Castro is **DIRECTED** to send a copy of this Order to Nick Garulay, Chief Executive Officer of Plaintiff The Doc App, Inc. By **December 7, 2025**, Mr. Castro must file on the docket a notarized affidavit from Mr. Garulay confirming he has read the Order.

5. Attorney Jason Castro is **HEREBY REFERRED** to the Florida Bar for appropriate discipline.

6. The Clerk is **DIRECTED** to transmit the entire record in this case to the **Florida Bar.**

7. Defendant's Motion for Sanctions Against Plaintiff (Doc. 26) is **DENIED AS MOOT**.

8. Defendant's Request for Oral Argument (Doc. 33) is **DENIED AS MOOT**.

9. Defendant's Motion for Leave to File Reply Brief and Also to Broaden Its Prior Request for Sanctions (Doc. 32) is **DENIED AS MOOT**.

10. Defendant's Motion to Strike Plaintiff's Notice of Voluntary Dismissal (D.E. 31) Or, In the Alternative, Motion to Impose Pre-filing Injunction (Doc. 34) is **DENIED AS MOOT**.

11.   Plaintiff has filed a Notice of Voluntary Dismissal Without Prejudice (Doc. [31]). The Notice is self-executing. *See* Fed. R. Civ. P. 41(a)(1)(A)(i).   Accordingly, the Clerk is now **DIRECTED** to deny all pending motions as moot, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on November 26, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record