IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE DOC APP, INC. d/b/a
MY FLORIDA GREEN,

  Plaintiff,

v.                                         Case No.: 2:25-cv-00838-SPC-NPM

LEAFWELL, INC.,

  Defendant.
_____/

**PLAINTIFF'S COUNSEL'S MOTION FOR RECONSIDERATION OF ORDER IMPOSING SANCTIONS AND REFERRAL TO FLORIDA BAR (DOC. 37)**

COMES NOW undersigned counsel, Jason K. Castro, and respectfully moves for reconsideration and modification of this Court's November 26, 2025 Opinion and Order (Doc. 37) pursuant to Federal Rule of Civil Procedure 59(e) and the Court's inherent authority, and states as follows:

**I.    INTRODUCTION**

The Court has imposed serious sanctions on undersigned arising from citation and quotation errors in Plaintiff's motion for temporary restraining order ("TRO"). Those errors were real, serious, and my responsibility alone. I do not minimize them. I accept the Court's finding that my handling of authorities in that filing fell below the standard expected of a member of this bar and warrants sanction.

This motion is not an attempt to relitigate the underlying dispute between The Doc App, Inc. ("Plaintiff") and Leafwell, Inc., nor an attempt to erase the Court's Rule 11 finding. It is a narrow request that the Court reconsider (1) the extent to which the sanctions rest on matters that were not identified in the Court's Order to Show Cause ("OSC"), and (2) the breadth of the sanctions imposed—particularly the two-year requirement to attach the sanctions order to every new case, the compelled client affidavit, and the bar referral—because, with respect, those measures reach beyond what is necessary to deter repetition of the citation misconduct at issue.

Undersigned has already taken concrete corrective steps: revising his research and drafting protocols, implementing written internal checklists for citation verification, and will enroll in additional ethics and technology training. In light of those steps, and the due-process and proportionality concerns set out below, undersigned respectfully asks the Court to narrow the sanctions to those necessary to address the citation failures themselves and their deterrence, and to strike or modify the collateral consequences that rest largely on issues outside the scope of the OSC.

## II. RELEVANT BACKGROUND

Plaintiff filed this action after learning that Leafwell was scheduling and marketing a series of "free medical marijuana certification" events across Florida. Based on the limited information Leafwell was willing to provide, Plaintiff understood that physician fees were being subsidized or covered by dispensary funding, and that the model was being rolled out quickly in multiple markets. Plaintiff reasonably viewed that expansion as a threat both to its own business and to the compliant operation of Florida's medical cannabis framework.

When Plaintiff, through undersigned, asked defense counsel direct questions about who was paying for what, what disclosures were made to patients, and what safeguards were in place, those questions were not substantively answered. Against that backdrop, and facing what Plaintiff understood as an accelerating rollout, Plaintiff instructed undersigned to move quickly and seek emergency relief in the form of a TRO.

The TRO memorandum, however, contained several citation and quotation errors. On November 6, 2025, the Court issued an OSC directing undersigned to show cause why he should not be sanctioned for misrepresentations of legal authority in the TRO. Undersigned filed a written response acknowledging the citation problems, explaining how they occurred, and detailing corrective steps.

Before the OSC was resolved, undersigned withdrew the TRO motion for the express purpose of correcting the authorities and supplementing the evidentiary record.

On November 26, 2025, the Court entered its Opinion and Order imposing sanctions personally on undersigned. Among other things, the Court ordered undersigned to pay Defendant's reasonable fees related to the TRO and sanctions proceedings; required undersigned, for two years, to attach the sanctions order to any complaint filed or case removed in this District; mandated in-person CLE on ethics and the use of artificial intelligence; required undersigned to provide the order to his client and file a notarized affidavit from the client; and referred undersigned to The Florida Bar and directed transmittal of the entire record.

Since entry of the Court's order, undersigned has provided Plaintiff's principal, Nicholas Garulay, with a copy of the Opinion and Order, discussed it with him, and confirmed that he has read it and understands that the sanctions run against undersigned personally. Mr. Garulay has no objection to undersigned seeking reconsideration and wishes undersigned to continue representing Plaintiff in this matter.

## III.     STANDARD FOR RECONSIDERATION

Reconsideration under Rule 59(e) is appropriate to correct clear error of law, to prevent manifest injustice, or to account for significant facts or developments that bear on the propriety of an order. In the sanctions context, the Eleventh Circuit has emphasized two core constraints: (1) basic due process—notice of the specific conduct at issue and a meaningful opportunity to be heard before sanctions are imposed; and (2) tailoring—sanctions must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); see, e.g., *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) (en banc); *In re Mroz,* 65 F.3d 1567 (11th Cir. 1995); *In re Engle Cases*, 283 F. Supp. 3d 1174, 1208–09 (M.D. Fla. 2017).

This motion is grounded on both prongs. First, the Court's order relies, in material part, on matters beyond the conduct described in the OSC when imposing reputational and bar-related sanctions, without prior notice that such matters would themselves be treated as sanctionable conduct. Second, the full set of sanctions imposed is, with respect, greater than necessary to deter repetition of the citation errors at issue, particularly in light of undersigned's remedial measures.

## IV.  NOTICE, SCOPE OF THE OSC, AND DUE PROCESS

The OSC focused on alleged Rule 11 violations in Plaintiff's TRO memorandum, specifically the accuracy and support for certain case citations and quoted or paraphrased passages. Undersigned responded on that understanding and addressed the TRO authorities and the process by which they were selected, cited, and checked.

In the subsequent sanctions order, the Court understandably scrutinized the TRO filings. But the order also relied heavily on additional categories of information that were not identified in the OSC:

1. The **tone and content of undersigned's email and conferral communications with defense counsel** regarding the citation issues;
2. Undersigned's **purported use of AI tools**, which the Court treated as the principal explanation for the errors and as a basis to doubt undersigned's candor; and
3. Conclusions that undersigned's explanations "lacked credibility" and reflected a failure to take responsibility.

Those subjects became central to several of the most severe sanctions: the referral to The Florida Bar with transmittal of the entire record; the requirement that undersigned "brand" every new filing for two years with this order; and the compelled notarized client affidavit. Respectfully, when new factual grounds become part of the basis for sanctions—particularly sanctions affecting reputation and professional licensure—Rule 11 and basic due process require notice that those specific issues are on the table and an opportunity to present evidence or explanation.

The OSC did not inform undersigned that his email tone with opposing counsel, his use (or non-use) of AI tools, or his overall credibility in responding to the OSC would themselves be treated as sanctionable conduct or as the foundation for bar-level and reputational sanctions. Had undersigned known that his technology workflow and his email exchanges with defense counsel were independent bases for sanctions, he could have offered a more complete factual record about his drafting process, the exact tools used or not used, the drafts exchanged, and the context of the conferral correspondence—sent while Defendant was threatening Rule 11 sanctions, demanding dismissal with prejudice in lieu thereof, and while refusing to answer basic questions about its conduct.

The Eleventh Circuit has made clear that before sanctions are imposed, the attorney must be given fair notice of the specific conduct alleged to warrant sanctions and the reasons why, and a meaningful opportunity to respond. *Donaldson* and *Mroz* both emphasize that when a court

proceeds on its own initiative, it must describe the specific conduct that appears to violate Rule 11(b) and give the attorney a genuine chance to address that conduct. In *Engle*, this Court reiterated those principles in the context of extensive sanctions proceedings following show-cause orders. Other courts have likewise reversed *sua sponte* sanctions where an attorney was not given specific notice that sanctions were under consideration. See, e.g., *Jensen v. Fed. Land Bank of Omaha*, 882 F.2d 340, 341–42 (8th Cir. 1989).

Here, the OSC did that with respect to the TRO citations, but not with respect to email tone, AI use, or broader credibility findings. Respectfully, using those additional issues as primary support for sanctions as serious as bar referral and multi-year public branding, without prior notice that they would be treated as sanctionable conduct, exceeded the scope of the OSC and falls short of Rule 11(c)(3)'s notice requirement. At a minimum, this warrants reconsideration of the sanctions that rest principally on those broader credibility and technology findings, or a limited evidentiary hearing focused on them.

## V. LIMITS ON POST–DISMISSAL JURISDICTION AND THE SANCTIONS RECORD

Plaintiff voluntarily dismissed its claims in this action before any ruling on the merits. Once the merits were dismissed, this Court's continuing jurisdiction was necessarily limited to collateral matters such as Rule 11 sanctions and fee shifting arising from filings made while the case was pending. See, e.g*., Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395–96 (1990) (a Rule 41(a)(1) dismissal does not deprive a court of jurisdiction to impose Rule 11 sanctions based on "conduct in the

case prior to dismissal"); *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992) (same principle where the underlying action itself cannot proceed).

Nothing in those decisions, however, authorizes an open-ended expansion of the sanctions record after dismissal, based on new, partisan submissions that introduce issues and factual disputes not identified in the OSC. To the contrary, post-dismissal jurisdiction is collateral and circumscribed: the court may address whether conduct **already before it** during the pendency of the case violated Rule 11, and may impose sanctions "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Here, the OSC framed the issue as whether undersigned's TRO memorandum misrepresented the content of particular legal authorities. That is the conduct over which the Court's collateral jurisdiction is clear. *After Plaintiff's dismissal, however, Defendant filed additional sanctions-related papers and exhibits that had not been part of the record when the OSC issued and that went beyond the citation issues identified there, including selected email exchanges and broader characterizations of undersigned's motives and methods.*

Respectfully, to the extent the Opinion and Order relies on those post-dismissal submissions to support reputational sanctions, bar referral, or broader credibility findings unrelated to the accuracy of the TRO citations, it exceeds the

proper collateral scope of post-dismissal Rule 11 proceedings. The sanctions power does not authorize a moving target, where the grounds for punishment expand after the merits have been dismissed and after the court has defined the allegedly sanctionable conduct in its OSC.

At a minimum, any sanctions imposed should be confined to the conduct described in the OSC and the record as it existed when the OSC issued, not to later, one-sided submissions that were never identified as independent grounds for discipline.

## VI. REQUEST TO STRIKE OR DISREGARD POST–DISMISSAL SANCTIONS FILINGS

Consistent with the foregoing, undersigned respectfully moves to strike, or in the alternative asks the Court to expressly disregard for purposes of sanctions, Defendant's sanctions-related filings submitted **after** Plaintiff's voluntary dismissal, to the extent they introduce:

1. Factual material or argument unrelated to the TRO citations identified in the OSC;

2. Characterizations of undersigned's "tone," "professionalism," or "litigation tactics" that were never noticed as sanctionable conduct; and

3. Selective excerpts of email correspondence offered to recast a Rule 11 dispute as a broader attack on undersigned's character or fitness.

Those post-dismissal filings do not bear on whether the TRO citations complied with Rule 11(b) at the time they were made, and they were not contemplated by the OSC. Allowing them to serve as a substantial basis for reputational and bar-related sanctions risks converting a narrow collateral proceeding into something approaching a one-sided disciplinary prosecution, fueled by adversarial briefing after the underlying case was dismissed.

To be clear, undersigned does not contend the Court lacked authority to receive post-dismissal briefing on the discrete TRO citation issue identified in the OSC. The concern is narrower: using those later filings as the primary evidentiary basis for expanding the scope and severity of sanctions—particularly as to matters not described in the OSC—raises serious due-process issues and goes beyond the limited collateral function recognized in *Cooter & Gell* and its progeny.

Accordingly, undersigned respectfully requests that the Court:

- Strike from the record, or expressly decline to rely on, Defendant's post-dismissal sanctions filings to the extent they introduce new grounds for sanction beyond the TRO citations identified in the OSC; and

- Clarify that any sanctions imposed are based solely on the conduct and record properly within the scope of the OSC and the Court's collateral post-dismissal jurisdiction.

## VII. PROPORTIONALITY AND TAILORING OF SANCTIONS

Undersigned acknowledges that some sanction is warranted. In particular, a fee-shifting award for Defendant's reasonable costs and fees incurred responding to the citation issues in the TRO filing, and a requirement that undersigned complete additional ethics and technology training, are appropriate, direct responses to the conduct at issue and serve clear deterrent and remedial purposes.

By contrast, the combination of: (a) a multi-year requirement to brand every future case in this District with this order, regardless of subject matter; (b) a compelled notarized affidavit from Plaintiff's principal; and (c) a formal bar referral with transmission of the entire record, goes substantially beyond what is necessary to deter future citation errors. These measures are reputational and collateral in nature, with long-term consequences for undersigned's professional standing that are disproportionate to the misconduct found, especially in light of remedial steps already undertaken and the absence of any prior disciplinary history.

For the Court's convenience, the sanctions and requested modifications are summarized as follows:

- **Fee-shifting:** Payment of Defendant's reasonable attorneys' fees incurred in responding to the TRO citation issue – undersigned does not seek reconsideration of this component and will satisfy any fee award.

- **Two-year "branding" requirement:** Two-year requirement that undersigned attach the sanctions order to any complaint filed or case removed in this District – undersigned respectfully asks that this branding requirement be stricken as unnecessary to deter and unduly punitive. *It also burdens Plaintiff, which has its own reputational and commercial interests and objects to having its business forcibly associated, in future unrelated litigation, with a sanctions order that runs only against counsel.*

- **In-person CLE in Florida:** Mandatory in-person CLE on ethics and AI – undersigned asks that the Court permit satisfaction of this requirement through comparable live remote or local programming, in light of medical limitations that make travel to Florida difficult. Undersigned is prepared to submit supporting documentation from the Pittsburgh Medical Center - Department of Veterans Affairs, under seal, if needed.

- **Notarized client affidavit:** Requirement that undersigned provide the order to his client and file a notarized affidavit from the client – undersigned

requests that this be stricken as unnecessary and paternalistic in light of the representations herein that the client has been fully informed, has read the Order, and continues to support counsel's representation. An affidavit has been filed voluntarily out of respect for the Court, notwithstanding undersigned's position that the Court lacks personal jurisdiction to compel such a filing by Mr. Garulay. (**See Exhibit A**.)

- **Bar referral of "entire record"** : Referral of undersigned and the entire record to The Florida Bar – undersigned respectfully requests that this referral be rescinded or, at minimum, narrowly cabined, including by clarifying that any referral is limited to the citation-related conduct described in the OSC and does not rest on disputed inferences regarding email tone or technology use.

Rule 11(c)(4) directs that sanctions be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Sanctions are not intended to punish for punishment's sake but to ensure future compliance and protect the integrity of the judicial process. The rule's safe-harbor mechanism likewise reflects a policy judgment: when a lawyer withdraws or corrects a challenged filing after concerns are raised, deterrence is usually best served by allowing that correction to stand without escalating punishment.

Although the Court proceeded here under Rule 11(c)(3), and the formal safe-harbor provision of Rule 11(c)(2) does not strictly apply, the underlying policy is still relevant. Once undersigned fully appreciated that the TRO's citations and paraphrases were defective, he withdrew the motion for the express purpose of correcting the authorities and supplementing the record, rather than doubling down on a flawed filing. He then implemented new verification protocols in a corrected filing. That is the course of conduct that Rule 11 is designed to encourage.

In light of those remedial steps, a fee award and targeted CLE requirements are sufficient to deter repetition. Multi-year public branding, compelled client participation, and a broad bar referral go further than necessary and function more as public shaming than as implementation of Rule 11's corrective purpose.

## VIII. CLARIFICATION OF FACTUAL FINDINGS AND REMEDIAL MEASURES

The Court's order correctly identifies that certain citations and quoted or paraphrased passages in the TRO were inaccurate, including at least one pinpoint cite that did not correspond to a valid Westlaw entry and language that did not precisely match the opinions cited. Those errors are serious, and undersigned does not contest that they justify sanctions.

Undersigned respectfully requests clarification, however, on two points that bear on the appropriate scope of sanctions and on any subsequent bar review.

First, while the TRO contained inaccurate citations and mis-paraphrased language, all of the authorities invoked were, in fact, existing decisions of real courts. The motion did not rely on imaginary or wholly fabricated cases. The failure was in how existing cases were researched, transcribed, and checked—serious failures, but of a different character than inventing cases out of whole cloth or submitting AI-generated "opinions" that do not exist in any reporter.

Second, undersigned recognizes the Court's concern that AI tools may have played some role in the flawed citations. To the extent AI-assisted tools were used at any stage, they were used as drafting aids, not as independent sources of law. Undersigned understands that no tool relieves him of his non-delegable duty to personally verify citations and quotations. Regardless of the extent of any AI use, undersigned accepts that his processes in connection with the TRO were inadequate to ensure accurate, court-verifiable citations.

In response, undersigned has:

- Implemented a policy that no case citation or quoted language will be filed unless it has been personally verified against an official reporter or a recognized legal database immediately before filing;
- Adopted an internal checklist for all dispositive and emergency filings that requires confirmation of every case name, reporter cite, court, year, and quoted passage against the underlying opinion;
- Prohibited the use of AI tools to generate or edit case citations or quotations in any filing, limiting any AI use to high-level drafting that is then fully vetted against primary sources; and
- Will enroll in additional continuing legal education focused specifically on legal ethics, candor to the tribunal, and the responsible use of technology in legal practice.

These concrete changes directly address the conduct that gave rise to the Court's order and make recurrence of similar citation errors highly unlikely. In light of these remedial steps, the harshest collateral sanctions—particularly the bar referral and multi-year public branding—are no longer necessary to deter repetition or to protect litigants and the Court.

IX.    **REQUESTED RELIEF**

Undersigned understands and accepts that his handling of authorities in the TRO motion warranted this Court's attention and sanction. The goal of this motion is not to erase that finding, but to ensure that the sanctions imposed remain within the scope of the conduct identified in the OSC, comply with due process, and are proportionate to the violation in light of the corrective measures now in place relevant thereto.

**WHEREFORE**, undersigned respectfully requests that the Court:

1. Grant reconsideration of the November 26, 2025 Opinion and Order (Doc. 37) to the extent it:

   a) Relies on email tone, alleged use of AI tools, and broader credibility findings—none of which were identified in the OSC—as independent grounds for reputational and bar-related sanctions; and

   b) Imposes sanctions beyond what is necessary to deter repetition of the citation-related conduct at issue; and

2. Modify the Opinion and Order to:

   a) Retain a reasonable fee-shifting award and CLE requirements directed at undersigned's citation-related errors.

b) Strike or substantially narrow the requirement that undersigned attach the Opinion and Order to every case filed or removed in this District for two years.

c) Strike the requirement that undersigned provide the Opinion and Order to his client and file a notarized affidavit; and

d) Strike the referral and transmission of the entire record to The Florida Bar, or, in the alternative, clarify that any referral is limited to the citation-related conduct described in the OSC and does not rest on unresolved factual disputes regarding technology use and email tone; and

e) Modify the ***in-person*** CLE requirement to permit undersigned to satisfy it through comparable CLE in his home jurisdiction via remote attendance in light of **medical limitations that significantly restrict his ability to travel to Florida.** If the Court deems it necessary, undersigned will provide supporting medical documentation under seal.

**VERIFICATION**

I, Jason K. Castro, declare under penalty of perjury that the factual statements in this motion concerning my own conduct, my communications with my client, my

use of research and drafting tools, and the remedial measures I have implemented are true and correct to the best of my knowledge and belief.

    Executed on December 04, 2025.

                                    Respectfully submitted,

                                    *Jason Castro*
                                    JASON K. CASTRO, ESQ.
                                    Law Office of Jason K. Castro, PLLC
                                    625 Quincy Lane
                                    Wexford, PA 15090
                                    jason@goldengatelegalcenter.com
                                    (718)702-5540

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on December 4, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                    Respectfully submitted,

                                    */s/ Jason K. Castro*
                                    JASON K. CASTRO, ESQ.