UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE DOC APP, INC. d/b/a MY FLORIDA GREEN, a Florida corporation,

    Plaintiff,

v.                                           Case No.:   2:25-cv-838-SPC-NPM

LEAFWELL, INC., a Delaware corporation,

    Defendant.

## OPINION AND ORDER

Before the Court is Plaintiff [The Doc App, Inc. d/b/a My Florida Green]'s Counsel's Motion for Reconsideration of Order Imposing Sanctions and Referral to Florida Bar (Doc. 37).  (Doc. 39).  Defendant Leafwell, Inc. responded in opposition.  (Doc. 42).  For the following reasons, the motion is granted in part and is otherwise denied.

On November 26, 2025, the Court entered an order imposing Federal Rule of Civil Procedure 11 sanctions on Jason Castro, Plaintiff's counsel, for his numerous misrepresentations of legal authority to the Court in Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") (Doc. 17).  (Doc. 37).  The Court explained the basis for sanctions: "The Court finds that Mr. Castro violated Rule 11(b) in filing the Motion for

TRO and imposes sanctions. His motion contained fabricated citations, citations that do not contain quoted language, and citations that do not relate to the purported proposition." (*Id.* at 7). Unconvinced by Mr. Castro's implausible explanation that his legal misrepresentations were the result of mere errors, the Court concluded that "[h]is misrepresentations constitute repeated, abusive, bad-faith conduct that cannot be recognized as legitimate legal practice and must be deterred." (Doc. 37 at 12 (internal quotation marks omitted)). As a result, the Court ordered Mr. Castro to: (1) pay Defendant's attorneys fees incurred in responding to the Motion for TRO; (2) file a copy of the Court's sanctions order in any case he files in or removes to the Middle District of Florida for the next two years; (3) attend an in-person CLE program in Florida on legal ethics and artificial intelligence; and (4) file a notarized affidavit from Plaintiff's Chief Executive Officer confirming that he read the Court's opinion. Finally, the Court referred Mr. Castro to the Florida Bar for appropriate discipline.

Now, invoking Federal Rule of Civil Procedure 59(e) and the Court's inherent authority, Mr. Castro asks the Court to reconsider:

> (1) the extent to which the sanctions rest on matters that were not identified in the Court's Order to Show Cause ("OSC"), and (2) the breadth of the sanctions imposed— particularly the two-year requirement to attach the sanctions order to every new case, the compelled client affidavit, and the bar referral—because, with respect, those measures reach beyond what is necessary to deter repetition of the citation misconduct at issue.

(Doc. 39 at 1–2). He concedes that the sanction for Defendant's reasonable costs and fees and the requirement that he complete additional ethics and technology training are appropriate, direct responses to his conduct. (*Id.* at 12).

First, Defendant points out that Mr. Castro incorrectly relies on Federal Rule of Civil Procedure 59(e) in his motion. (Doc. 42 at 3). "Rules 59(e) and 60(b) only come into play after a final, appealable judgment is entered." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024). Because the sanctions order was a non-final order, the Court must evaluate it under the standards inherent in Rule 54(b)—"plenary authority to reconsider, revise, alter or amend a non-final order before the entry of final judgment." *Id.*

The Eleventh Circuit cautions that "in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Id.* Reconsideration is left the sound judgment of the district court, which the Eleventh Circuit reviews for abuse of discretion. *See Noshirvan v. Couture*, No. 2:23-CV-1218-JES-KCD, 2025 WL 2697825, at *1 (M.D. Fla. Sept. 23, 2025). Further, reconsideration is proper only where: (1) there is an intervening change in controlling law, (2) new evidence has become available,

or (3) relief from the judgment is necessary to correct clear error or prevent manifest injustice. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).

Mr. Castro does not claim an intervening change in controlling law or new facts. Rather, he apparently contends that reconsideration is necessary to correct clear error or manifest injustice. (Doc. 39 at 5). Specifically, he argues that the Court's order to show cause did not put him on notice that his email tone with opposing counsel, his use of AI tools, or his credibility in responding to the order to show cause would be treated as sanctionable conduct or as the foundation for bar-level and reputational sanctions. (*Id.* at 7).

Mr. Castro's due process arguments are without merit.[1] The Court was clear about the basis for sanctions. The undersigned stated that Mr. Castro violated Rule 11 in filing the Motion for TRO and that his misrepresentations constituted conduct that required deterrence with strong sanctions. (Doc. 37 at 7, 12). Mr. Castro's repeated, numerous misrepresentations to the Court and refusal to take responsibility for them in response to the order to show cause formed the basis for sanctions—not, as he suggests, his tone with opposing counsel or use of AI tools. In fact, the sanctions order explained not

---

[1] In its response, Defendant provides a thorough explanation as to why due process was not violated based on the timeline of events. (Doc. 42 at 5–8). In the interest of judicial economy, the Court will not reiterate it here.

4

only Mr. Castro's original misrepresentations but also the reasons for which his explanations in his response compounded the misrepresentations of case law to the Court. (*Id.* at 7–10). It was these legal misrepresentations, which the Court painstakingly analyzed, that constituted sanctionable conduct. With no credible explanation from Mr. Castro in response to the order to show cause for his repeated misrepresentations, the Court then took more time to provide context for what occurred in the whirlwind of litigation (*i.e.*, the emails and use of AI).

To the extent it requires explanation, any additional language in the sanctions order concerning emails and AI was mere dicta. Mr. Castro argues that the "email correspondence . . . recast a Rule 11 dispute as a broader attack on [his] character and fitness." (Doc. 39 at 11). He is wrong. The Court need not have (and did not) rely whatsoever on Mr. Castro's email correspondence with opposing counsel to find that his misrepresentations in filing the Motion for TRO severely damaged his character and fitness in the Court's eyes. Rather, his own unbelievable explanations in his order to show cause secured that conclusion. Indeed, not *one* passed muster, as the Court detailed.

Accordingly, the Court will not reconsider any of its sanctions except one. Mr. Castro asks that the Court permit satisfaction of the CLE requirement through comparable live remote or local programming, in light of medical

5

limitations that make travel to Florida difficult.[2] (Doc. 39 at 13). He states that he is prepared to submit supporting documentation from the Pittsburgh Medical Center - Department of Veterans Affairs, under seal, if needed. The Court grants this portion of the motion. Mr. Castro may complete the CLE requirement through comparable live remote or local programming.

However, the rest of the Court-imposed sanctions are necessary and warranted under the circumstances. Mr. Castro repeatedly misrepresented legal authority to the Court, and in response to the order to show cause, provided implausible assertions that his misrepresentations were mere errors. The order to show cause put him on notice that his misrepresentations were subject to sanctions, and nevertheless, he doubled down. Any credibility findings stem from his own response to the Court's order to show cause. The requirement to attach the sanctions order to any cases filed in or removed to this District for the next two years is justified; it puts the Court's judicial colleagues on notice of Mr. Castro's conduct in this matter, which will hopefully deter similar future conduct. The referral to the Florida Bar serves the same purpose of deterrence. And the Court required Mr. Castro to demonstrate that

---

[2] The Court originally required that Mr. Castro attend the CLE in person in Florida. This was no arbitrary requirement. Mr. Castro sued Defendant in Florida, which supports the Court's requirement that the Florida Bar approve any CLE completed in accordance with the sanctions order. But the Court takes Mr. Castro's assertion that he has medical limitations on good faith and will not require him to travel to Florida to complete this requirement. However, the CLE must be approved for members of the Florida Bar.

6

his client's CEO read the sanctions order because it decided, in its discretion, "not [to] administer the ultimate sanction against Mr. Castro's client by striking the Notice [of Dismissal]," as Defendant proposed. (Doc. 37 at 13).

Accordingly, it is now

**ORDERED:**

Plaintiff [The Doc App, Inc. d/b/a My Florida Green]'s Counsel's Motion for Reconsideration of Order Imposing Sanctions and Referral to Florida Bar (Doc. 37) (Doc. 39) is **GRANTED IN PART** and **DENIED IN PART** to the extent explained above.

**DONE** and **ORDERED** in Fort Myers, Florida on December 23, 2025.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record